RENTON K. BRODIE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

THOMAS J. WOOD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MARK UPSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

JOHN F. ROGERS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 109183, 109184, 109185, 109186.   Promulgated December 16, 1942.

*F. F. Dinsmore, Esq.*, for the petitioners.
*DeWitt M. Evans, Esq.*, for the respondent.

278

## OPINION.

BLACK, *Judge:* These proceedings have been consolidated. The issue in each proceeding is identical and the facts are the same except as to the names of the different individuals involved, their positions and length of service with the company, and the amounts of alleged income involved. The same question as to the admissibility of certain of the stipulated facts was raised by these petitioners at the hearing as was raised in *Richard R. Deupree,* I. T. C. 113.

As in that proceeding, the presiding Member reserved his ruling upon the admissibility of such evidence. Inasmuch as the question involved is precisely the same, our ruling is the same, and our findings of fact have been prepared accordingly. For a more detailed account of our ruling see *Richard R. Deupree, supra.*

. In his determination of the deficiencies respondent relied upon section 22 (a) of the Revenue Act of 1938. This section reads in part as follows:

SEC. 22. GROSS INCOME.

(a) GENERAL DEFINITION.—"Gross income" includes gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid, * * *

Neither the pleadings nor the stipulation of facts shows whether the petitioners used the cash basis in filing their income tax returns. The cases have been tried, however, as if petitioners were on the cash basis, and we shall assume that such was the case.

It is clear from the facts, which have been stipulated, that the petitioners did not receive in cash the extra compensation with which the Commissioner is seeking to tax them. But a taxpayer on the cash basis can be taxed on income which he has not actually received, if under the facts present it can be held that he has constructively received it. The doctrine of constructive receipt was discussed by us in some detail in *Richard R. Deupree, supra,* and we shall not repeat that discussion here.

We held in the *Deupree* case that there was constructive receipt of the income in question and that the taxpayer was taxable thereon.

Our decision in that case was largely based upon the fact that Deupree's failure to receive $50,000 in cash instead of an annuity policy costing $50,000 was due entirely to his own volition. We set out briefly in that opinion the facts present in the record which we thought justified such a conclusion.

In these proceedings the facts are different in some very substantial respects from what they were in the *Deupree* case. In the instant case the failure of petitioners to receive in cash the amounts of the extra compensation fund which were used by the company to purchase the annuity contracts which were delivered to them was not due to their own volition. In fact they apparently were not consulted about the matter prior to the company's decision to purchase the annuity contracts. In the "Stipulation as to Testimony of Richard R. Deupree" which was filed at the hearing, it was agreed that if called as a witness he would testify, among other things (after stating what he conceived to be the advantages of the plan to purchase annuity contracts, both to the company and the employees involved), as follows:

Based on this general philosophy I took into consideration the age, financial condition, family obligations, etc., insofar as I knew them and decided each individual case in the light of these factors and in accordance with my best judgment. Neither the amount of bonus nor the amount of annuity was known in advance by any recipient. He had no option, indeed no advance knowledge, as to what he might receive.

Under these circumstances and the authorities cited in *Richard R. Deupree, supra,* we do not think that it can be held that petitioners "constructively received," as those terms are generally understood, the cash which the company used in purchasing the annuity contracts. We do not think these petitioners were in the position to go to the company and say: "You have some money which, under the special remuneration plan adopted, I am entitled to receive in cash. However, I would prefer to have a certain amount of that cash invested in an annuity contract and I direct you to purchase such a contract in my name and pay for it out of the cash which is due me as extra compensation." If such had been the case, the petitioners would have as effectively received the amount in question as if it had been paid to them in cash. We so held in the case of *Richard R. Deupree, supra.* But, for reasons just above stated, we do not think the same situation can be so held to exist in these proceedings. However, while we do not think that the doctrine of constructive receipt as it is commonly understood can be correctly applied in these proceedings, it is undoubtedly true that the amount which the Commissioner has included in each petitioner's income was used for his benefit, albeit not at his own direction, in the purchase of an annuity contract, and the contract so purchased was issued in the name of the annuitant and was

delivered to him and was part of the plan for his additional remuneration. Do these facts result in the receipt of income in the amounts determined by the Commissioner? Respondent contends that they do, and he relies principally upon the broad and comprehensive language of section 22 (a), *supra*. In this contention we think respondent must be sustained.

In *George Mathew Adams*, 18 B. T. A. 381, we held that life insurance premiums paid by a corporation on life insurance policies taken out on the life of the employee and payable to a beneficiary designated by him represented extra compensation to such employee and was taxable to him. In that case the taxpayer made pretty much the same contentions as petitioners make here.

We stated the contentions of the taxpayer in the *Adams* case to be in part as follows:

It was also urged on behalf of the petitioner that the premiums in question did not constitute income to him, since they were not received by him and he did not have the free use and disposition thereof, but that, if it were considered that the petitioner had received additional compensation through the action of the corporation, the amount thereof would not be in excess of the cash surrender value of the policies. * * *

In the instant case the petitioners urge, as among their strongest reasons why the amounts in question should not be taxed as income to them, the fact that they did not have the free use and disposition of such funds and that the annuity contracts which they received could not be assigned and had no cash surrender value.

Notwithstanding the several contentions made by the taxpayer in the *Adams* case, we held that the insurance premiums paid by the corporation on the life insurance policies taken out for Adams were taxable to him. In giving our reasons for so holding, among other things, we said:

As shown by the findings of fact, each person upon whose life an insurance policy was written made application for the policy himself and the policy was issued to the applicant. The applicant was permitted to designate the beneficiaries and in no case was the corporation designated as a beneficiary. Section 213 of the Revenue Act of 1921, under the provisions of which the petitioner's tax returns for 1922 and 1923 were filed, defines gross income as including "gains, profits, and income derived from salaries, wages, or compensation for personal service * * * of whatever kind and in whatever form paid." We think that the premiums paid upon the life insurance policies taken out on the life of the petitioner constituted additional compensation for him for the years 1922 and 1923, within the meaning of the taxing act. Consequently, we are of the opinion that the amounts of $3,299.21 and $2,515.81 constituted additional compensation of the petitioner for the calendar years 1922 and 1923, respectively, and that the respondent committed no error in including such amounts in his taxable income for the respective years.

Section 213 of the Revenue Act of 1921, cited in our opinion above, is

the same as section 22 (a) of the Revenue Act of 1938, upon which the Commissioner relies in the instant proceedings.

For a holding like that made in the *Adams* case, see *N. Loring Danforth*, 18 B. T. A. 1221; *Frank D. Yuengling*, 27 B. T. A. 782; affd., 69 Fed. (2d) 971; *Commissioner* v. *Bonwit*, 87 Fed. (2d) 764; certiorari denied, 302 U. S. 694. In the latter case the court in reversing the Board, among other things, said:

* * * Hence the premium payments can be considered income to the respondent [Bonwit] only if they were made as additional compensation for his services to the corporation. Several cases have held that payment of insurance premiums by an employer constituted additional compensation to an employee whose life was insured in favor of his wife and children or other beneficiaries designated by him. [Citing authorities.] The Board of Tax Appeals distinguished these cases from the case at bar, but the differences they point out seem to us insufficient basis for an opposite result.

In the instant proceedings there can be no doubt that the sums of money which the company expended for the annuity contracts, which were procured by the company upon the joint applications of the company and the employee in question and then delivered to the employees, were intended as extra compensation for the year 1938. The facts set out in our findings of fact abundantly establish that proposition.

The Board said in *N. Loring Danforth, supra*, "That the purpose, plan and effect was to give petitioner this additional compensation for his services is manifest. The benefit was directly to him, and the corporation received no more benefit than any employer derives when it increases the compensation of its employee. * * *"

The facts being what they are, we can see no distinction in principle from the issue involved in the instant proceedings and that which was involved in the above cited cases. It seems to us that our decision must be the same.

It is true that the Commissioner in some of his administrative rulings has treated premiums paid by an employer for annuity contracts taken out for employees differently from the way he has treated insurance premiums paid by an employer on life insurance policies taken out on the life of the employee. For example, in I. T. 2891, C. B. XIV-1, p. 50, it was ruled as follows:

Advice is requested relative to the treatment under the Revenue Act of 1934 of amounts paid by an employer toward the purchase of retirement annuity contracts for the benefit of his employees.

It is held that contributions made by an employer for the purpose stated do not constitute income constructively received by the employees. Such amounts are not, therefore, required to be included in the Federal income tax returns of the employees for the year or years in which paid. The aggregate of the amounts contributed by the employee beneficiary toward the purchase of a retirement annuity, but not the amount contributed by the employer, con-

stitutes "the aggregate premiums or consideration paid for such annuity" within the meaning of section 22 (b) of the Revenue Act of 1934. Amounts received by employees in the form of annuities are to be returned for Federal income tax purposes in the manner and to the extent provided in that section.

To the same effect is the ruling of the Bureau in I. T. 3346, C. B. 1940-1, p. 62.

The Treasury has no regulations dealing specifically with the subject matter covered by the foregoing administrative rulings. Notwithstanding these prior administrative rulings, the Commissioner strongly insists in the instant proceedings that the amounts herein involved are taxable to petitioners under the broad and comprehensive provisions of section 22 (a), *supra*. As we have already stated, the statute being what it is and the facts being what they are, we think the Commissioner must be sustained.

We think the case of *Raymond J. Moore*, 45 B. T. A. 1073, is distinguishable on its facts. In that case we held that so much of the premiums on each retirement annuity contract as was paid in each year by the trustee out of funds furnished by the employer for the retirement annuity contracts involved in that proceeding did not constitute income to the several officers and employees of the corporation who were beneficiaries of the retirement plan. In that case we rested our decision primarily on the fact that the corporation employer had set up a pension trust in behalf of certain of its employees and we relied upon section 165 of the Revenue Act of 1936, printed in the margin.[1]

In the instant proceedings the company has not set up any pension trust. In each instance the petitioner made a written application in his own name to the Connecticut General Life Insurance Co. on a special form provided for that purpose. Each application was also signed by the Procter & Gamble Co. The annuity contracts were issued directly to the petitioners and were fully paid for out of the special remuneration fund mentioned in our findings of fact, without any restrictions or conditions attached as to term of employment, cessation of employment, or contribution by the annuitant. For these and other reasons we think the instant proceedings are distinguishable from *Raymond J. Moore, supra*.

If and when petitioners begin to draw their annuities, assuming

---

[1] SEC. 165. EMPLOYEES' TRUSTS.

A trust created by an employer as a part of a stock bonus, pension, or profit-sharing plan for the exclusive benefit of some or all of his employees, to which contributions are made by such employer, or employees, or both, for the purpose of distributing to such employees the earnings and principal of the fund accumulated by the trust in accordance with such plan, shall not be taxable under section 161, but the amount actually distributed or made available to any distributee shall be taxable to him in the year in which so distributed or made available to the extent that it exceeds the amounts paid in by him. Such distributees shall for the purpose of the normal tax be allowed as credits against net income such part of the amount so distributed or made available as represents the items of interest specified in section 25 (a).

that the law remains what it now is, they will receive a tax benefit from the compensation payments with which they are now being taxed. For example, section 22 (b) (2) of the Internal Revenue Code reads in part as follows:

* * * Amounts received as an annuity under an annuity or endowment contract shall be included in gross income; except that there shall be excluded from gross income the excess of the amount received in the taxable year over an amount equal to 3 per centum of the aggregate premiums or consideration paid for such annuity (whether or not paid during such year), until the aggregate amount excluded from gross income under this title or prior income tax laws in respect of such annuity equals the aggregate premiums or consideration paid for such annuity. * * *

See also the new subparagraph (B) added as an amendment by the Revenue Act of 1942 to section 22 (b) (2) of the Internal Revenue Code.

It would seem to require no argument that if petitioners are taxed as extra compensation for the lump sum premiums which the company paid in 1938 for the annuity contracts out of the funds especially created for additional compensation, such sums would represent aggregate premiums or consideration paid by petitioners for "such annuity" under the provisions of the foregoing statute.

Reviewed by the Court.

*Decision will be entered for the respondent.*

---

SMITH, TURNER, and HILL, *JJ.*, concur only in the result.

---

LEECH, *J.*, dissents.

---

VAN FOSSAN, *J.*, dissenting: The processes of reasoning by which the payments by the corporation are construed in the prevailing opinion to constitute income to petitioners seems to me to distort the reasonable intendment of the statute. The cases are also indistinguishable from the well considered opinion of Judge Leech in *Raymond J. Moore*, 45 B. T. A. 1073. I therefore dissent.