W. A. Shannon v. Commissioner. D. W. Cater v. Commissioner. William I. Kesterson v. Commissioner. John B. Ebinger v. Commissioner.
W. Shannon v. Commissioner
Docket Nos. 2689, 2817, 2818, 4036.
United States Tax Court
1945 Tax Ct. Memo LEXIS 255; 4 T.C.M. (CCH) 350; T.C.M. (RIA) 45111; March 30, 1945
Rollin P. Rodolph, C.P.A., 1 Montgomery St., San Francisco, Calif., for the petitioners. Byron M. Coon, Esq., for the respondent. MELLOTT
Memorandum Findings of Fact and Opinion MELLOTT, Judge: The Commissioner determined deficiencies in income tax for the calendar *256 year 1941 as follows: Docket No. 2689 (Shannon)
$ 163.62
Docket No. 2817 (Cater)
210.45
Docket No. 2818 (Kesterson)
5,917.03
Docket No. 4036 (Ebinger)
505.61 The issues are - (1) Did each petitioner receive taxable income in 1941 in the amount of the cash payment made by his employer for the purchase of a single premium annuity contract for him? (2) Was petitioner Ebinger entitled to the statutory exemption as the head of a family in 1941? Findings of Fact Petitioners are residents of Klamath Falls. Oregon. They were employed as officers or "key men" by the Kesterson Lumber Corporation, hereinafter referred to as the corporation, except Ebinger, who was the corporation's attorney. Each filed a return for the taxable year upon a cash receipts and disbursements basis with the collector of internal revenue for the District of Oregon. The corporation had a very successful year in 1941, and the lease on the sawmill and plant property it was operating was expiring in 1942, making future operations uncertain. Meetings of its stockholders and board of directors were held in November 1941 to consider the advisability of taking "action upon a bonus to executive, *257 administrative and other valuable employees." The following is an excerpt from the minutes of the special meeting of the board of directors held on November 7, 1941: "Irving E. Kesterson further stated that the Corporation had often wanted to provide some pension plan or form of security for its valuable employees, but had been prevented from so doing because of uncertainty of economic conditions, uncertainty of earnings and lack of profits in the past, or because of the necessity of meeting other obligations. He stated that during this year economic conditions had been favorable and substantial profits had been made; that these favorable conditions might not continue, and that it would be well to anticipate quick changes in economic conditions which may result in lean years. He stated he believed that the Corporation should do something substantial for this group of its employees, now that it has the means to do so, and while it still has its lease on the Klamath Falls sawmill and box factory plants. He stated he felt these valuable employees, who had been with the Corporation during these years and had assisted in making it possible to organize the business operations to take advantage *258 of the favorable conditions prevailing this year, should be given a substantial reward for their past services and loyalty, preferably in some form of pension security for later years. He stated he had been studying the possibilities and advantages of an annuity pension bonus that would give a measure of security at a reasonable retirement age, and that the stockholders had approved an annuity pension bonus on the single premium deferred refund annuity plan on whatever basis the Board of Directors deemed equitable and fair to the group of employees to be selected by the Board. He also stated it had been proposed to Klamath Timber Company to join with the Corporation in such a move and that this also had been approved by the stockholders at yesterday's meeting. "This subject was thereupon discussed and each of the Directors expressed himself as favoring such a bonus, particularly emphasizing the fact that these employees had rendered loyal and valuable services to the Corporation during the years when economic conditions were unfavorable, and that their efforts had contributed largely to the successful operation of the company during the present year of good operating conditions, *259 and that a substantial part of the earnings of the year 1941 should be set apart and made available to these employees on some practical annuity payment plan, such as a single premium deferred refund annuity. "Among the resolutions adopted at this meeting were the following: "BE IT RESOLVED That Kesterson Lumber Corporation, together with Klamath Timber Company, purchase from Equitable Life Assurance Society of the United States single premium deferred refund annuities without loan or surrender value, for each of the employees named and in the amounts set opposite their respective names hereinafter in this Resolution set forth, as a bonus reward to said employees for the year 1941, the expense thereof to be borne by the corporation, except in such cases where an employee renders services for each of the said companies. In such case each company to pay the proportionate cost of the annuity for such employee in proportion to the earnings of such employee in each corporation, and except employees of Klamath Timber Company, the cost of the annuities of such employees to be borne by Klamath Timber Company, said Klamath Timber Company to reimburse Kesterson Lumber Corporation all monies *260 advanced by Kesterson Lumber Corporation in the purchase of such annuities for employees of Klamath Timber Company, both full and part time, in accordance with this Resolution. "BE IT FURTHER RESOLVED that each of said annuities be paid for in full by the corporation at the time of the purchase of such annuities, and the annuities be issued direct to such employees individually and respectively as owner annuitants in such manner that the corporation shall have no interest or right whatever in such annuities or any incident thereof or appertaining thereto with no right whatever of recall, cancellation, surrender, or to borrow against the same, or to revoke the same, or to assert or claim any right or privilege therein or thereto whatever." During the year 1941 the corporation purchased for each of the petitioners from The Equitable Life Assurance Society of the United States a "Single Consideration Deferred Refund Annuity" contract. The same form of contract was furnished each petitioner, varying only in name, amount of payment, and other data specifically applicable to the individual. The amounts paid by the corporation in 1941 for the annuity contracts were as follows: For Shannon
$ 1,419.22
For Cater
1,765.87
For Kesterson
10,750.35
For Ebinger
1,433.38
*261 The policies referred to above were 4 out of a series of 18 purchased by the employer during 1941 and issued to the employees selected. Each contract provides for the payment to the annuitant named therein, when he reaches the age of sixty years, of certain monthly allowances for the remainder of his life. None has a cash or loan value. The annuitant is given no option to take any amount by way of lump sum settlement or otherwise than as provided. If the annuitant dies before the maturity date of the policy the entire amount of the purchase price is payable to the named beneficiary designated by him. If the annuitant's death occurs after the maturity date, but before the total of the monthly payments equals the purchase price, the excess of the purchase price over the total payments is payable to the named beneficiary. The policy also provides that the annuitant shall have no right to assign, transfer, hypothecate, encumber, commute or anticipate his interest in any benefits or payments under the policy. The respondent determined that the cost of the annuity contract received by each petitioner should be included in his taxable income for the year 1941. Petitioner John B. Ebinger *262 resides at Klamath Falls, Oregon, where he is engaged in the practice of law. He is not married. During the taxable year he maintained his widowed mother in a separate residence in Tillamook, Oregon, which is 350 miles from Klamath Falls. He has a separate room which he uses when he visits his mother, usually about once a month. He pays the rental on the home of $22.50 per month, and owns practically all of the furniture and personal property located in it. He did not bring his mother to Klamath Falls because she was subject to fainting spells and her doctor advised that she live in a low altitude. In 1941 she had a paralytic stroke and has been confined to the house ever since. During that year he sent her at least $500 to cover her hospital and other expenses. Her only other source of income was a pension of $150 per annum. Since the death of his father in 1936, petitioner has exercised family control over his mother. Being of the opinion that in order to be entitled to classification as head of a family it was necessary that he live under the same roof as his mother, Ebinger did not claim the statutory exemption in his return for 1941. In that return he claimed a $750 exemption *263 as a single man and a $400 credit for his dependent mother. In his petition he alleges that he was the head of a family in the taxable year and that therefore he is entitled to the statutory exemption of $1,500. Opinion The first issue, which is raised in each case, is whether the respondent erred in including in petitioner's gross income the cost of the annuity contract purchased for him by his employer as an old age, or retirement, benefit. The present facts do not differ in any material respect from those considered in Renton K. Brodie, 1 T.C. 275. There, as here, a corporation purchased paid up retirement annuity contracts with death benefit clauses for certain of its executives and employees and delivered the contracts to them. The beneficiaries had no option to receive in cash the amounts expended in lump sum payments for the annuity contracts. The payments were intended as additional compensation to the employees, who were responsible for, or contributed to the success of, the business. It was held that the amounts expended represented additional compensation to the petitioners and that they were taxable thereon under the provisions of section 22 (a) of the *264 Revenue Act of 1928. See also Richard R. Deupree, 1 T.C. 113; Oberwinder v. Commissioner, 147 Fed. (2d) 255, (C.C.A. 8, February 5, 1945). Raymond J. Moore, 45 B.T.A. 1073, cited and relied upon by the present petitioners, was distinguished in the Brodie case. It was stated that our decision in favor of the taxpayer in the Moore case had been based "primarily on the fact that the corporation employer had set up a pension trust in behalf of certain of its employees * * *." That was also the basic reason for deciding in favor of the taxpayer in Phillips H. Lord, 1 T.C. 286, also cited by petitioners. In the instant cases, however, no pension trust was set up by the corporation. It and petitioners, therefore, cannot avail themselves of the benefits of section 165, I.R.C.
The only other case cited by petitioners, Charles L. Jones, 2 T.C. 924, is clearly distinguishable. The question there was whether a retired employee was required to include in his gross income the amount received by him annually as "retirement payments" under a contract with an insurance company, the contract having been purchased *265 and wholly paid for by his employer. He had not returned the value of his retirement annuity contract as income in any income tax return filed by him and it was held that the amounts received during the taxable years constituted taxable income, no portion of which could be excluded under section 22 (b) (2), I.R.C.
The corporate intent in the instant cases is quite apparent from an examination of the minutes of the stockholders' and board of directors' meetings at which the purchase of the annuity contracts was considered and approved. Therein we find such expressions as "bonus", "the Corporation should do something substantial for this group of employees", "a substantial reward for their past services and loyalty", "annuity pension bonus", and "a bonus reward for the year 1941". These expressions clearly indicate an intention and desire on the part of the corporation to reward certain of its employees for past services. Cf. Poorman v. Commissioner, 131 Fed. (2d) 946 affirming Samuel Poorman, Jr., 45 B.T.A. 73. Section 22 (a), I.R.C., provides for the inclusion in gross income of "compensation for personal services, *266 * * * of whatever kind and in whatever form paid". We have concluded that the purchase of the annuity contracts constituted compensation for personal services rendered by the several annuitants. It follows that the respondent did not err in including the amounts so expended in petitioners' gross incomes. Renton K. Brodie, supra; Oberwinder v. Commissioner, supra.Cf. William E. Freeman, 4 T.C. 582. The remaining question, relating to the claim of petitioner Ebinger that he is entitled to the statutory exemption as the head of a family for the year 1941, should, in our judgment, be resolved in petitioner's favor. The evidence discloses that he actually supported and maintained his mother in the Tillamook house, that he had the right to exercise and did exercise family control over her, that he kept her there, rather than with him, as a matter of necessity since she could not stand the higher altitude where he was living and practicing his profession, and that he was, in fact, the head of a family composed of his mother and himself. We therefore hold that the claimed exemption should be allowed. Cf. William Lee Tracy, 39 B.T.A. 578. *267 Decision will be entered for the respondent in Dockets Numbered 2689, 2817 and 2818. Decision will be entered under Rule 50 in Docket No. 4036.