Schaefer Klaussmann Co., Inc. v. Commissioner. Eric K. Klaussmann v. Commissioner. Bernhard K. Schaefer v. Commissioner. John W. Brunnemer v. Commissioner. Arthur C. Hamilton and Josephine B. Hamilton v. Commissioner. Ralph Brecken Schwartz v. Commissioner.
Schaefer Klaussmann Co. v. Commissioner
Docket Nos. 4853, 4854, 4855, 4856, 4857, 4858.
United States Tax Court
1945 Tax Ct. Memo LEXIS 194; 4 T.C.M. (CCH) 526; T.C.M. (RIA) 45173; May 16, 1945
F. Van Siclen Parr, Jr., Esq., for the petitioners. Francis S. Gettle, Esq., for the respondent. SMITH Memorandum Opinion SMITH, Judge: These proceedings involve income and excess profits tax for 1941 as follows: Excess
Docket No.
Petitioner
Income Tax
Profits Tax
4853
Schaefer Klaussmann Co., Inc.
$2,597.45
$8,492.04
4854
Eric K. Klaussmann
4,712.62
4855
Bernhard K. Schaefer
3,159.29
4856
John W. Brunnemer
282.97
4857
Arthur C. Hamilton and Josephine B. Hamilton
267.33
4858
Ralph Brecken Schwartz
1,477.78
The questions in issue are whether the cost of single premium annuity contracts which the corporate petitioner purchased in 1941 for five of its officers and employees, the individual petitioners, constituted additional compensation taxable to the annuitants *195 in that year, and, if so, whether as to the extent of such amounts the compensation paid to two of such officers, who were also the principal stockholders, was excessive. [The Facts] Petitioners Eric K. Klaussmann and Ralph Brecken Schwartz filed their returns for 1941 with the collector of internal revenue for the first district of New York while the other petitioners all filed their returns with the collector for the second district of New York. Petitioner Schaefer Klaussmann Co., Inc., hereinafter referred to as the corporation, is engaged in the green coffee importing business. Its principal office is in New York City. It was organized by petitioners Schaefer and Klaussmann in 1928. They had both had considerable experience in the importation and sale of green coffee, and related products, and were thoroughly familiar with the practices of the trade. Originally there were 252 shares of common stock issued to Schaefer and Klaussmann equally and $50,000 par value of 6 percent cumulative preferred stock of which $42,000 was issued to Schaefer and $8,000 to Klaussmann. Klaussmann later sold his preferred shares to Schaefer. In 1941 there were outstanding 1,000 shares of noncumulative *196 4 percent preferred shares of a par value of $100 each all owned by Schaefer. There was never any change in the amount or ownership of the common stock. The corporation operated at a loss or at a small profit each year until 1940 when it had net earnings of $24,456.45. In 1941 its net earnings were approximately $76,000. On December 11, 1941, the board of directors, consisting of Schaefer and Klaussmann and one other qualifying stockholder, passed the following resolution: "WHEREAS, the retirement provisions of the Social Security Act provide for a maximum benefit retirement of $85.00 per month and "WHEREAS this maximum alone would be inadequate to sustain the employees of our organization at retirement age and "WHEREAS our Government seeks to encourage pensions and retirement systems and has given them due recognition in Section 165 of the Income Tax Laws and "WHEREAS other progressive organizations have adopted various forms of retirement plans and "WHEREAS such plans encourage employees to be more faithful and loyal to their organizations, and, also have a marked effect on labor turnover. "NOW, THEREFORE, BE IT RESOLVED, that the Board of Directors shall at their *197 discretion set aside as much of the gross income as they deem adequate for an annuity retirement plan for the benefit of all employees who have been with the company five (5) years or more. "The treasurer is hereby authorized to contact an appropriate insurance company, preferably the Aetna, for the purpose of underwriting this plan, and, at his discretion, he is hereby authorized to purchase single payment annuity contracts for each of the employees who are eligible. Such purchases are to be made effective at once for the year 1941. The following employees are eligible for participation in this plan: Bernhard K. Schaefer Eric K. Klaussmann John W. Brunnemer Ralph B. Schwartz Arthur Hamilton and "BE IT FURTHER RESOLVED that, at the discretion of the Board of Directors, as earnings permit, other employees as they reach the five (5) year period of employment, may become eligible for participation in this plan; and further, that the benefits of the employees in the said plan be increased from time to time as the income of the Company warrants such action at the discretion of the Board of Directors." At the time the above resolution was adopted the corporation had 11 employees *198 in the United States, including Schaefer and Klaussmann, five of whom had been employed for more than five years and were therefore entitled under the resolution to receive annuity contracts. It also had 15 or 20 salaried employees in Colombia, South America, who were the beneficiaries of a pension fund required by the government of that country. The contracts referred to in the resolution of December 11, 1941, were purchased by the corporation from Aetna Insurance Co. and were delivered to the employees in December, 1941. They were all single premium annuity contracts under which the annuitant would begin receiving stipulated monthly payments at the age of 65. In accepting the contracts the employees understood and agreed that they were to receive the payments only as retirement benefits and only after they had left the active employment of the corporation. The cost of the contracts, the age of the annuitants, the number of years they had been employed, and the monthly annuity payments which they were to receive under the contracts were as follows: Purchase Price
Years of
Monthly
of Contract
Age
Employment
Annuity
Bernhard K. Schaefer, President
$4,543.15
44
13 $50
Eric K. Klaussmann, Vice-President and Treasurer
8,926.40
49
13
80
John W. Brunnemer, Secretary
1,812.26
43
8
20
Ralph B. Schwartz
4,697.92
51
7
40
Arthur Hamilton
1,902.60
45
7
20
*199 The contracts were all assignable by the annuitants and might be surrendered to the issuing company at any time for cash equal to the excess of the premium paid thereon over the annuity payments, if any, less 5 percent of such excess if surrendered at the end of the first year and 2 1/2 percent if surrendered at the end of the second year. Additional annuity contracts for the same employees and for other employees who had since qualified were purchased by the corporation in 1942 and 1943. Early in 1943 the employees delivered their contracts to a trust company which agreed to hold them in trust for their benefit according to an agreement between them and the corporation. Other than that described above the corporation had no pension plan for its employees in effect in 1941. The sales, gross receipts, and net earnings of the corporation and the salaries paid to its officers in each of the years 1937 to 1941, inclusive. were as follows: 1937
1938
1939
1940
1941
Sales
$1,892,147.38
$1,807,536.08
$1,536,344.95
$1,742,144.14
$2,944,251.22
Gross Profit
33,980.33
44,457.98
16,091.48
68,046.67
191,621.79
Net Profit before taxes
1,655.53
6,535.68
(11,999.60)
24,456.45
76,076.13
Salaries
B. K. Schaefer, Pres.
$ 8,100.00
$ 10,496.25
$ 3,000.00 $ 12,200.00
* $ 26,787.50
E. K. Klaussmann, Vice-
Pres. and Treas.
9,000.00
12,500.00
10,500.00 15,120.00
* 28,787.50
J. W. Brunnemer, Sec'y
2,552.50
2,879.94
2,619.92 3,474.92
* 5,254.12
A. C. Hamilton
2,175.00
2,645.94
2,619.92 3,499.92
* 4,024.96
R. B. Schwartz
5,000.00
6,800.00
4,800.00 6,200.00
* 12,046.70
*200 It is the contention of petitioners that the annuity contracts purchased by the corporation for its officers and employees were part of a pension plan such as contemplated by section 165, Internal Revenue Code. They further contend that if we should hold otherwise, and find that the annuity contracts constituted additional compensation for the officers and employees, the total salaries of such officers and employees, including the cost of the annuity contracts, was not excessive, as determined by the respondent. The premiums paid by corporations on annuity contracts for the benefit of their officers or employees were held to constitute additional compensation taxable to the annuitants in the year of such payment in Richard R. Deupree, 1 T.C. 113, Renton K. Brodie, 1 T.C. 275, and D. D. Hubbell, 3 T.C. 626. In the Hubbell case, unlike the Deupree and Brodie cases, there was an intervening trust but we found that the trust was not "a trust forming a part of a stock bonus, pension, or profit-sharing plan" within the meaning of section 165, Internal Revenue Code *201 . In the instant case there was an intervening trust but it did not enter the picture until after the close of the taxable year 1941. Even so, the trust here merely held the contracts as custodian for the annuitants and its functions did not form any part of the pension plan. On authority of the cases cited the respondent's determination that the premiums paid on the annuity contracts for the benefit of the officers and employees in 1941 were additional compensation taxable to them in that year is sustained. The respondent has further determined that the additional compensation so paid to Schaefer and Klaussmann, who were the principal officers and stockholders of the corporation, was excessive and therefore not deductible by the corporation. The evidence shows that Schaefer and Klaussmann were both men of outstanding qualifications. Klaussmann has been engaged in foreign trade most of his business life. He has spent considerable time in Central America and Europe. He speaks German and Spanish fluently and Portuguese well enough to make himself understood. He also has a working knowledge of French. From 1917 until 1928 he was an employee of W. R. Grace & Co., one of the largest *202 importers of green coffee, tea, and related commodities in the United States. He served as assistant manager of its coffee department in San Francisco, then as manager of the coffee department in New York, and later filled other positions of considerable trust and responsibility. In the last several years of his employment with that company he received as compensation a salary of $8,000 per year plus 5 percent of the profits, which in good years amounted to a total compensation of $18,000 to $20,000 per year. At the time of organization of petitioner corporation, as well as in 1941, he was considered one of the country's foremost coffee experts and was favorably known in foreign trade circles in several Central and South American countries as well as in Europe. Schaefer was also widely known as an expert in foreign trade and especially in green coffee. He was held in high esteem by the government officials in Colombia and other countries and was awarded the Crux de Boyaca by that government. He was a member of the board of governors of the New York Coffee & Sugar Exchange and for a period of 8 years was president of the New York Chamber of Commerce. At the present time he is in the *203 armed forces serving as a Captain in the aviation branch of the Marine Corps. The compensation paid to Schaefer and Klaussmann in 1941, including their regular salaries and the annuity contracts referred to above, amounted to $31,330.65 for Schaefer and $37,713.90 for Klaussmann. Considering the outstanding qualifications of those petitioners for the business in which the corporation was engaged and the comparatively small salaries which they received in the lean years following the organization of the business, we do not think that their compensation, as increased by the cost of the annuity contracts, was more than reasonable in amount. We think that the respondent erred in determining otherwise. Decisions will be entered under Rule 50. Footnotes
*. Exclusive of premiums paid on annuity contracts.↩