DAVID WATSON ANDERSON AND MAUDE CRAWFORD ANDERSON, HUS-
BAND AND WIFE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

DAVID WATSON ANDERSON, PETITIONER, *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT.

Docket Nos. 8765, 8766.    Promulgated December 27, 1945.

*L. W. Perrin, Esq.*, and *L. C. Dodge, C. P. A.*, for the petitioners.
*F. L. Van Haaften, Esq.*, for the respondent.

1322

## OPINION.

ARUNDELL, *Judge*: Petitioner contends that the trusts to which Pacolet and Monarch made payments during the taxable years involved formed a part of a "pension * * * plan of an employer for the exclusive benefit of some or all of his employees" within the meaning of section 165 of the Internal Revenue Code,[2] as amended by the Reve-

---

[2] SEC. 165. EMPLOYEES' TRUSTS.

(a) EXEMPTION FROM TAX.—A trust forming part of a stock bonus, pension, or profit-sharing plan of an employer for the exclusive benefit of some or all of his employees—

    (1) if contributions are made to the trust by such employer, or employees, or both, for the purpose of distributing to such employees the earnings and principal of the fund accumulated by the trust in accordance with such plan, and
    (2) if under the trust instrument it is impossible, at any time prior to the satisfaction of all liabilities with respect to employees under the trust, for any part of the corpus or income to be (within the taxable year or thereafter) used for, or diverted to, purposes other than for the exclusive benefit of his employees,

shall not be taxable under section 161, but the amount actually distributed or made available to any distributee shall be taxable to him in the year in which so distributed or made available to the extent that it exceeds the amounts paid in by him. Such distributees shall for the purpose of the normal tax be allowed as credits against net income such part of the amount so distributed or made available as represents the items of interest specified in section 25 (a).

        *         *         *         *         *         *         *

nue Act of 1939.[3]  For this reason, he urges, the payments should not be taxable to him.  Alternatively, he contends that the payments were not received by him as compensation in any form, that they were never available to him, that they were not subject to his "unfettered command," and that therefore he should not be taxed under the doctrine of constructive receipt.

We think petitioner's first contention is untenable.  We are unable to find from the evidence that either of petitioner's employers ever formulated or adopted such a pension plan as is contemplated by the statute.  The mere fact that the companies, on two or three widely separated occasions, voted small pensions to retiring officers at the dates of their respective retirements is not sufficient to show the existence of such a plan.  During the period in question Pacolet had approximately 4,000 employees and Monarch had approximately 2,000 employees.  Neither has ever made for the benefit of its other employees any arrangement similar to that for the benefit of petitioner.  At the times the payments were made into the trust funds petitioner owned stock in both companies and was the principal executive officer of both.

Petitioner asserts that the statutory requirement that the plan be "for the exclusive benefit of some or all of his [an employer's] employees" is satisfied if one or more employees are covered.  Further asserting that the trusts were irrevocable and that it was impossible for any part of the corpus or income to be devoted to purposes other than for his exclusive benefit, he contends that all the statutory elements have been complied with.  But it is inconceivable, we think, that Congress could have intended any such arrangement as we have before us to qualify as tax exempt under section 165 of the statute.

Much the same argument as that advanced by petitioner has been answered adversely to him in *Hubbell* v. *Commissioner*, 150 Fed. (2d) 516, affirming 3 T. C. 626.  There it was contended that employee trusts for the exclusive benefit of two principal executive officers of a corporation were within the protection of section 165 as it existed in 1941, because the word "some" meant "two or more"; but the argument was unsuccessful.  In that case it was said that a pension plan, in order to qualify under section 165:

\* \* \* must be bona fide for the exclusive benefit of employees in the provision of retirement benefits; and must not be merely a device to pay employees additional compensation with the tax on the same deferred to a later date, especially when the plan provides retirement benefits to only a few key executives or officers.

---

[3] The Revenue Act of 1942, which also amended section 165, provided that in the case of a plan in effect on or before September 1, 1942, the amendments would not be applicable until the beginning of the first taxable year beginning after December 31, 1942.  In this case the first taxable year of both Pacolet and Monarch beginning after December 31, 1942, was that beginning on December 1, 1943.  All the controverted payments to the trust funds were made before that date.

We conclude that section 165 of the code is of no aid to petitioner.

On the alternative contention, petitioner argues that he had nothing to do with the creation of the trusts, that the payments were not received by him as compensation in any form, and that the money was never available to him. We think the argument is without merit. The facts show that petitioner, in conversation with Milliken, a director and large stockholder of each company, made the initial suggestion which led to the trust arrangements. Although not voting on the particular orders and resolutions, petitioner was present at every meeting of the boards of directors at which any action with respect to the trusts was taken. Furthermore, it is clear that each of the payments made to the trusts was intended as additional compensation for petitioner. In some of the resolutions or orders of the directors the payments were characterized as "bonuses"; in others they were stated to be "in consideration of the efficient services rendered" by petitioner for a period of time falling within the particular taxable year; and in one instance the payment was expressly stated to be "additional compensation for services rendered." It is observed also that in 1944, after the Bureau of Internal Revenue questioned the taxability of the trust payments, petitioner requested that his bonus be paid to him in cash, and it was done, the amount of the cash bonus being the same as the amount which had been paid into the trust fund in 1942 and 1943.

In the Revenue Act of 1942 Congress extensively amended section 165 of the code to provide, in general, that in order for a plan to qualify thereunder a definite stated percentage of all the employees of an employer must be covered, and that the plan must not be discriminatory in favor of officers, shareholders, supervisors, or highly compensated employees. In section 165 (b) it was provided that in the case of an exempt trust the amount actually distributed or made available to the employee-beneficiary should be taxable to him, in the year in which so distributed or made available, as an annuity under section 22 (b) (2) ; but in section 165 (c) it was provided that in the case of a nonexempt trust the amount contributed by the employer should be included in the gross income of the employee for the taxable year in which the contribution was made if the employee's beneficial interest in the contribution was nonforfeitable.

The present statutory scheme of taxing the employee on the employer's contribution in the year made, when the trust is not exempt, is but in accord with the result reached in the *Hubbell* case, *supra*, which arose under the prior law. Furthermore, in that case the court said that the 1942 amendment presented "no apparent change in Congressional purpose." Cf. *Renton K. Brodie*, 1 T. C. 275, a case involving the year 1938, in which we held employees taxable under section 22 (a) on sums expended by their employer for the purchase of re-

tirement annuity contracts for their benefit, even though the contracts were nonassignable and had no cash surrender value, and even though the employees had no election to receive the sums in cash.

Under the circumstances, we conclude that respondent did not err in taxing the disputed sums to petitioner under section 22 (a) of the code.

On the depreciation issue the evidence is meager. We have set out in our findings substantially all there is in the record relating thereto. Respondent's determination that an allowance of 2 percent constitutes a reasonable allowance for depreciation is attended with the presumption of correctness, which we think petitioner has failed to overcome. We therefore sustain respondent on this issue.

*Decision will be entered for the respondent.*