HAROLD G. PERKINS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8922. Promulgated May 14, 1947.

*Richard E. Cross, Esq.*, for the petitioner.
*A. J. Friedman, Esq.*, for the respondent.

#### OPINION.

MURDOCK, *Judge*: The Commissioner determined a deficiency of $11,918.31 in the income tax of the petitioner for 1941. The petitioner does not contest several of the adjustments which led to the deficiency. The only question for decision is whether the Commission erred in adding to income $18,874.80 described as a "Payment by your employer to employees' trust for your benefit." The facts have been set forth by the parties in a lengthy stipulation. A summary will suffice for present purposes.

The petitioner filed his individual income tax return for 1941 with the collector of internal revenue for the district of Michigan. The return was prepared on the basis of cash receipts and disbursements.

The petitioner was employed during 1941 by the Nash-Kelvinator Corporation (hereinafter called Nash).

Nash had not established any pension plan for any of its employees or officers up to September 23, 1941. A committee which had been appointed to study the general problem of annuities, retirement income, and employment contracts reported to the board of directors on July 22, 1941, its decision that the "time was not propitious to inaugurate a broad plan of retirement income or annuities." Nash had about 41,000 employees at that time.

The board of directors of Nash passed a resolution on September 23, 1941, authorizing the payment of cash bonuses in the total amount of $129,800 to certain officers and key employees as extra compensation for excellent services rendered to the corporation during the fiscal year ended September 30, 1941. None of the cash bonus went to the petitioner, to W. F. Armstrong, to H. A. Lewis, or to F. R. Pierce. Those four men, like those who received the cash bonuses, had been employed

by Nash with the understanding that their annual salary was to be considered the minimum compensation of each and if, in the opinion of the management, the services rendered and the earnings of the corporation during any year of their employment should warrant the payment of extra compensation or bonus to them, such extra compensation as should be deemed reasonable would be paid to them.

The board of directors at its meeting of September 23, 1941, adopted a resolution authorizing the establishment of a trust for the benefit of those four men, who were key vice presidents of the corporation. The resolution contained a recital that the trust was established to insure the continuance of those officers in the employ of the corporation. It was provided that Nash would pay to the trustee $110,000 in trust by way of additional compensation to the four men for the excellent services actually rendered by them to the corporation during the fiscal year ended September 30, 1941. The beneficiaries were as follows:

| | |
|---|---|
| W. F. Armstrong | $50,000 |
| F. R. Pierce | 25,000 |
| H. G. Perkins | 20,000 |
| Howard A. Lewis | 15,000 |
| Total | 110,000 |

It was recited also that the four men had been called upon to render extraordinary services greatly in excess of what was contemplated at the time of their original employment, that these payments in trust, together with their other compensation, would not exceed reasonable compensation for the personal services actually rendered by them during the year, and the creation of the trust would constitute an inducement to continue in the employ of the corporation. The trust was to be supervised by an advisory committee. It was provided in the resolution that one-half of the $110,000 should be used for the purchase of or the payment of the first annual premium upon annuity contracts, with or without provision for death benefits, for the benefit of each beneficiary, and the remaining one-half was to be held or invested by the trustee as directed by the advisory committee, but that part might be applied in whole or in part in payment of subsequent annual premiums upon the annuity contracts just mentioned or for the purchase of or payment of premiums upon additional contracts of like nature. The trust indenture was to permit additional payments in the discretion of the board of directors for the benefit of the beneficiaries named or for other beneficiaries as the board of directors might designate provided, however, that there would be no obligation on the part of Nash to make any further payments of any kind beyond the $110,-000 specifically authorized to be paid during the current fiscal year ending September 30, 1941. The trust indenture was to contain such

penalties for termination of the employment as Mason, the president of Nash, should deem advisable in order to create an inducement for the beneficiaries to remain in the employ of Nash. The trust indenture was to provide specifically that none of the trust property should ever in any way revert to or for the benefit of Nash.

A trust indenture in accordance with the resolution was executed on September 30, 1941. It provided that if any beneficiary, within five years from the date of the creation of the trust for his benefit, should voluntarily leave the employ of Nash, except on account of illness or incapacitating disability, or if within that period his employment by Nash should cease through fault of his own as determined by the advisory committee, then the amount of benefits which he should be entitled to receive from the payments by Nash should equal one-half of that property held for his benefit in the trust. Any portion not paid to him was to be held for the benefit of the other trust beneficiaries. The trust beneficiaries had the right to designate death beneficiaries under any contracts of insurance held for their benefit.

Armstrong was employed by Nash as a vice president on June 1, 1937, and continued in that capacity until his employment was terminated on June 30, 1943. The petitioner was promoted to be a vice president of Nash in 1937 and was still serving in that capacity at the time of the hearing in this case. Pierce was employed by Nash on August 1, 1939, was elected vice president in charge of sales on July 1, 1941, and continued in that capacity until his employment was terminated on June 30, 1943. Lewis was employed by Nash on January 1, 1926, became a vice president prior to 1937, and was still serving in that capacity at the time of the hearing in this proceeding. The petitioner was the only one of the four who was a director of Nash. He owned about one-tenth of 1 per cent of its outstanding stock.

The trust was not created at the instance of the four beneficiaries. They had no part in selecting it as a means of benefiting themselves.

The trustee, at the direction of the advisory committee, invested $55,000 of the trust funds on September 30, 1941, as initial premiums on four insurance or annuity policies. The individual beneficiaries had made applications for those policies shortly before that date. An insurance policy in the face amount of $86,356, insuring the life of the petitioner and providing an annuity in a larger amount, was thus obtained by the payment thereon of the first annual premium in the amount of $10,000. The policy was designated "Special Retirement Endowment" and called for an annual premium of $10,000 for 13 years or until the earlier death of the insured. The insurance company allocated $1,125.20 of the first premium to the life insurance features of the policy.

The following table shows the name, the office, and the amount of compensation of officers as shown by Nash on its return, and, in addi-

tion, the portion of the compensation represented by the payment into the trust fund:

| Name | Office | Total compensation | Trust fund payment |
|---|---|---|---|
| C. W. Nash | Chairman of board | $5, 000. 04 | |
| G. W. Mason | President | 225, 209. 07 | |
| H. G. Perkins | Vice president | 62, 209. 00 | $20, 000. 00 |
| W. F. Armstrong | Vice president | 124, 999. 99 | 50, 000. 00 |
| N. E. Wahlberg | Vice president | 25, 000. 00 | |
| H. A. Lewis | Vice president | 50, 000. 16 | 15, 000. 00 |
| R. A. DeVlieg | Vice president | 5, 000. 00 | |
| F. R. Pierce | Vice president | 40, 000. 00 | 25, 000. 00 |
| H. J. Mellum | Secretary | 9, 500. 00 | |
| G. V. Egan | Treasurer | 10, 000. 00 | |
| W. R. Crosett | Controller | 15, 600. 00 | |
| Total | | 572, 518. 26 | 110, 000. 00 |

Nash claimed a deduction of the amount shown above. The petitioner, in his taxable income reported for 1941, included $1,125.20 of the total of $20,000 which was paid into the trust for his benefit. He included that amount on the theory that it was allocable to the life insurance feature of the combination annuity life insurance policy purchased for his benefit by the trustee.

The advisory committee notified the trustee on September 28, 1942, to pay the second premium of $55,000 on the four policies above mentioned. Nash paid an additional $55,000 to the trustee on September 30, 1942, with instructions from the advisory committee to hold the money in trust for the benefit of the four persons named pending further instructions. Another similar payment was made on December 30, 1942. The record does not show what action of the board of directors authorized the two latter payments. The trustee was directed on June 23, 1943, to exhaust all available funds in the payment of premiums on the four life insurance policies.

The employment of Armstrong and Pierce was terminated by mutual agreement between them and Nash on June 30, 1943. The advisory committee held that the circumstances did not constitute a forfeiture under the provisions of the trust instrument.

The trust was terminated on June 25, 1943, by appropriate action of the board of directors of Nash and the trustee was authorized to make the trust property available to the beneficiaries upon termination of employment, regardless of the reason for the termination. The policy which had been issued in favor of the petitioner was continued on December 3, 1945, as paid-up insurance in the amount of $38,601.

The first contention of the petitioner is that the trust here in question comes within the provisions of section 165 of the Internal Revenue Code applicable to the year 1941 and, consequently, only the amount actually distributed or made available to him in that year is taxable to him as a part of his 1941 income. The section is entitled "Em-

ployees' Trusts." Paragraph (a) is entitled "Exemption from Tax." It provides that "A trust forming part of a stock bonus, pension, or profit-sharing plan of an employer for the exclusive benefit of some or all of his employees" shall not be taxable under section 161 if certain conditions are met, "but the amount actually distributed or made available to any distributee shall be taxable to him in the year in which so distributed or made available to the extent that it exceeds the amounts paid in by him." The petitioner argues that Nash created this trust as a pension plan for the exclusive benefit of the four employees named therein and it qualifies as an employees' trust within the meaning of section 165. The respondent argues in opposition that the trust was merely a method of paying these four men additional compensation for their services for 1941 and was not a true pension plan for employees within the meaning of section 165.

A taxpayer claiming exemption must bring himself clearly within the exempting provisions of the law. He must show, *inter alia*, that an actual pension plan existed. The trust here in question applied to only four employees of Nash. They were key executives who were regularly receiving high salaries. They were to receive a bonus for 1941. The payment of $110,000 in trust for the benefit of these four men was in the nature of a bonus or additional compensation for their services for one year. No intention to create a pension plan appears. The record does not show clearly what intention, if any, Nash may have had in 1941 as to the future use of this trust. The trust deed expressly provided that Nash was under no obligation to make any payment to the trust in addition to the original payment of $110,000 which represented extra compensation to these men for 1941. There was no guarantee that Nash would ever make another payment or carry the plan to fruition. Cf. *South Texas Commercial National Bank of Houston*, 7 T. C. 764. Future payments were entirely within the discretion of Nash. Actually, it later paid some additional money into the trust. The trust apparently did not serve the purpose of retaining the employees and did not last long. The petitioner attempts to explain its termination by a change in the revenue laws in regard to employees' trusts which caused Nash to abandon this plan and adopt another one designed to come within the new law. Perhaps no one of the circumstances mentioned above would keep a trust from being exempt under section 165. They must all be considered to determine whether this was an exempt pension plan. The cases of *D. D. Hubbell*, 3 T. C. 626; affd., 150 Fed. (2d) 516; *Renton K. Brodie*, 1 T. C. 275; and *David Watson Anderson*, 5 T. C. 1317, while involving different facts, nevertheless point the way in cases of this type. The conclusion has been reached, after taking into consideration all of the circumstances surrounding this trust, that it was not an employee's trust of

the kind described in section 165 and the petitioner is not entitled to exemption under that section.

The petitioner apparently recognizes that if the full amount of $20,000 is not exempt under section 165, then one-half of it would be taxable for reasons stated in *Renton K. Brodie, supra*. He argues that in no event is the other one-half of the $20,000 taxable to him in 1941 because that $10,000 was forfeitable. It was not unqualifiedly committed to the petitioner's benefit in 1941. There was no certainty during that year that he would ever get any benefit from it. That benefit could be lost if he did not remain in the employ of Nash for five years. It has been held, in accordance with the Commissioner's regulations, that an employee's beneficial interest which is forfeitable at the time the contribution is made is not taxable to him at that time. See Regulations 111, sec. 29.165–7; *Julian Robertson*, 6 T. C. 1060; *Schaefer* v. *Bowers*, 50 Fed. (2d) 689; certiorari denied, 284 U. S. 668. The contingency in the two cases cited was substantially the same as in the present case and upon those authorities that point is decided for the petitioner.

*Decision will be entered under Rule 50.*