THE LINCOLN ELECTRIC COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 1296. Promulgated January 11, 1946.

*Ashley M. Van Duzer, Esq.*, *Thomas V. Koykka, Esq.*, *Sumner Canary, Esq.*, and *Louis C. Weiss, C. P. A.*, for the petitioner.

*DeWitt M. Evans, Esq.*, and *T. F. Callahan, Esq.*, for the respondent.

## OPINION.

LEECH, *Judge*: The sole contested issue for the taxable year 1940 arises from respondent's disallowance, as a deduction from gross income, of the sum of $400,008.84 paid by petitioner in that year to the Sun Life Assurance Co. of Canada to purchase funded annuity contracts for certain of its officers and employees. The issues for 1941 arise from respondent's disallowance as a deduction (1) of the sum of $575,206.43 paid to purchase similar annuity contracts and (2) of the amount of $1,000,000 paid by petitioner to a so-called "employees' profit-sharing trust."

In the deficiency notices for the respective taxable years the respondent explained the disallowance of each of the above deductions as "not an allowable deduction within the provisions of Section 23 of the Internal Revenue Code." In the notice for the year 1941, the respondent set forth as additional grounds for the disallowance of the amounts of $575,206.43 and $1,000,000 that, to the extent set out in a schedule attached to the deficiency notice, the amounts were "considered unreasonable compensation and not allowable under the provisions of section 23 (a) of the Internal Revenue code."[1] He attacks

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.
   In computing net income there shall be allowed as deductions:
   (a) EXPENSES.—
   (1) TRADE OR BUSINESS EXPENSES.—
   (A) IN GENERAL.—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered: * * *

there the reasonableness of the compensation paid to 438 out of a total of over 900 employees. In both taxable years the respondent has allowed as reasonable the total amount actually paid petitioner's employees, consisting of the base pay plus the cash bonus.

Respondent contends that the expenditures in the purchase of annuity contracts and the payment to the trust under the so-called profit-sharing plan did not constitute salaries or compensation paid for services actually rendered. As to the expenditures for annuity contracts, the grounds urged in support of such determination, briefly summarized, are: (1) The employees were not parties to the contract; (2) they had no vested rights to receive anything thereunder unless they survived the contingencies of forfeiture by death or severance from petitioner's employ and reached the retirement age of 60 years; (3) there was no contractual or legal obligation upon petitioner to make the payments in the respective years or to make further payments; (4) the employees had already been adequately and fully compensated for the services rendered through the base pay and cash bonuses; (5) the employees were not informed of the respective interests allocated to them; and (6) no employee returned as income the amounts allocated in the respective taxable years. Substantially similar grounds are urged for disallowing the deduction of the expenditure of $1,000,000 to the "profit-sharing trust" in 1941.

Petitioner argues that such amounts are properly deductible either (a) as compensation paid for personal services actually rendered, or (b) if not such compensation, they are allowable as an "expense" of doing business, or (c) if they do not constitute a deduction from gross income, then they are merely a cost of goods sold, to be reflected in the computation of gross income, and that as to this respondent has no jurisdiction. We limit our discussion and decision to those contentions.

Petitioner's primary contention is that the questioned disbursements are allowable as deductions from gross income under the statute as compensation paid for services actually rendered. Such deductions, of course, are permissible only by legislative grace and, to sustain its position, petitioner must establish that the payments fall clearly within one of the statutory provisions authorizing their allowance. *New Colonial Ice Co.* v. *Helvering*, 292 U. S. 435. There are only two sections of the revenue laws granting deductions for payments of compensation made to an officer or employee in the years here involved. These are sections 23 (a) (1) (A) of the code, heretofore

set out, and section 23 (p) of the code,[2] limited by section 165,[3] as these sections read prior to amendment by the Revenue Act of 1942. It is conceded that sections 23 (p) and 165 do not apply. Petitioner rests its case on this point on section 23 (a). It is contended that the items in dispute constitute "compensation [paid]" within that section.

To be allowable as deductions of compensation, amounts paid to officers and employees for services must be compensation for services actually rendered to the employer. Section 23 (a), *supra*. If not of that character, no necessity of inquiring as to their reasonableness exists. Undoubtedly, as petitioner apparently concedes, the word "paid" used in the first clause of section 23 (a), *supra*, in connection with "expenses" in which "salaries or other compensation" are later included, must be treated as applying also to "salaries or other compensation:" Considering the section as thus construed, were these disbursements in dispute "compensation [paid]"?

---

[2] SEC. 23. DEDUCTIONS FROM GROSS INCOME.
In computing net income there shall be allowed as deductions:

\* \* \* \* \* \* \*

(p) PENSION TRUSTS.—
(1) GENERAL RULE.—An employer establishing or maintaining a pension trust to provide for the payment of reasonable pensions to his employees shall be allowed as a deduction (in addition to the contributions to such trust during the taxable year to cover the pension liability accruing during the year, allowed as a deduction under subsection (a) of this section) a reasonable amount transferred or paid into such trust during the taxable year in excess of such contributions, but only if such amount (1) has not theretofore been allowable as a deduction, and (2) is apportioned in equal parts over a period of ten consecutive years beginning with the year in which the transfer or payment is made.

\* \* \* \* \* \* \*

(3) EXEMPTION OF TRUSTS UNDER SECTION 165.—The provisions of paragraphs (1) and (2) of this subsection shall be subject to the qualification that the deduction under either paragraph shall be allowable only with respect to a taxable year (whether the year of the transfer or payment. or a subsequent year) of the employer ending within or with a taxable year of the trust with respect to which the trust is exempt from tax under section 165.

[3] SEC. 165. EMPLOYEES' TRUSTS.
(a) EXEMPTION FROM TAX.—A trust forming part of a stock bonus, pension, or profit-sharing plan of an employer for the exclusive benefit of some or all of his employees—
(1) if contributions are made to the trust by such employer, or employees, or both, for the purpose of distributing to such employees the earnings and principal of the fund accumulated by the trust in accordance with such plan, and
(2) if under the trust instrument it is impossible, at any time prior to the satisfaction of all liabilities with respect to employees under the trust, for any part of the corpus or income to be (within the taxable year or thereafter) used for, or diverted to, purposes other than for the exclusive benefit of his employees,
shall not be taxable under section 161, but the amount actually distributed or made available to any distributee shall be taxable to him in the year in which so distributed or made available to the extent that it exceeds the amounts paid in by him. Such distributees shall for the purpose of the normal tax be allowed as credits against net income such part of the amount so distributed or made·available as represents the items of interest specified in section 25 (a).
(b) TAXABLE YEAR BEGINNING PRIOR TO JANUARY 1, 1940.—The provisions of clause (2) of subsection (a) shall not apply to a taxable year beginning prior to January 1, 1940.

Of. course, as petitioner argues, a payment for services, to be deductible, need not be limited to services rendered in the taxable year. *Lucas* v. *Ox Fibre Brush Co.*, 281 U. S. 115. Nor is it required that the employer be legally obligated to make the payment at the time of. performance of the services, but it must be made as a consideration for services actually rendered to the employer. *Old Colony Trust Co.* v. *Commissioner*, 279 U. S. 716.

What is meant in the statute by the expression "compensation [paid]"? Is that term of such little meaning there that it is satisfied by a showing of mere disbursement by the employer? We think not. "Compensation" is defined in Webster's New International Dictionary, as, *inter alia*, the "Act or principle of compensating." Thus, there is an inference from the use of that word that there must be receipt of the payment by the employee before that payment can be said to constitute "compensation." See sec. 22 (a). This inference is emphasized by the use of the additional word "paid." "Paid" to whom? We think that the use of the combined terms "compensation" and "paid" could mean only "paid to the employee." But, since section 165 is not applicable, if these disbursements for annuities and to the trust when made were "compensation [paid]" to employees, why would they not be taxable, as such, at that time to the employees under section 22 (a)? See *Cecil W. Taylor*, 2 T. C. 267; affd., *Miller* v. *Commissioner*, 144 Fed. (2d) 287; and *Renton K. Brodie*, 1 T. C. 275. Yet none of the "recipients" treated them so. No "annuitant" reported any of the amounts paid for "his annuity." It is difficult to believe that the officers included in the trust were not aware of its purport. But none of them, nor the employees, reported any part of the payments to the trust. True, the correctness of that action is not before us. But, it undoubtedly lurks in the background against which the pending question must be considered. Where payments of compensation consisted of securities, the measure of the "compensation [paid]," and so deductible if reasonable, under section 23 (a), has been consistently held to be the same as the measure of the "income derived from * * * compensation" taxable to the employee under section 22 (a). That measure is the fair market value of those securities when received by the employee. *International Freighting Corporation*, 45 B. T. A. 716; affd., 135 Fed. (2d) 310; *Edison Bros. Stores, Inc.*, 45 B. T. A. 472; reversed on another point, 133 Fed. (2d) 575; *Alger-Sullivan Lumber Co.* v. *Commissioner*, 57 Fed. (2d) 3; *Hudson Motor Car Co.* v. *United States*, 3 Fed. Supp. 834; *Package Machinery Co.*, 28 B. T. A. 980; *Indianapolis Glove Co.* v. *United States*, 96 Fed. (2d) 816.

In the case of *Richard R. Deupree*, 1 T. C. 113, a single premium retirement annuity contract was purchased at its fair market price to

the annuitant from an insurance company, at the direction of the employer upon the request of the petitioner-employee, from a fund established for the purpose. This policy was then delivered unconditionally to the employee-petitioner as additional compensation for past services. The employer had deducted its cost of the policy under section 23 (a) of the code. The controversy before this Court involved only the simultaneous taxability to the employee-petitioner of such amount as "compensation [paid]" under section 22 (a), as proposed by respondent. We affirmed on the ground that petitioner had constructively received as compensation the amount expended by the employer for the annuity. Then, in *Renton K. Brodie, supra*, involving identical facts except that the annuity contracts there involved were purchased by the employer for the employees without their knowledge or consent, we reached the same conclusion, although the doctrine of constructive receipt did not apply. There the annuity policies could have been bought by the employee annuitants at the same fair market price for which the employer purchased them. The policies were actually and unconditionally delivered to the annuitants. They could not be deprived of them. The annuitant employees could designate their beneficiaries. The findings of fact in that case contained, *inter alia*, the following paragraph:

Each annuity contract was labeled "Special Single Premium Retirement Annuity with Income Settlements at Optional Ages Non-Participating." The insurance company agreed to pay in monthly installments a definite "life income," commencing on the annuitant's seventieth birthday. If he should die after that day but before he received 120 monthly payments, the remaining payments were to be made serially to his beneficiary. Prior to the annuity date the annuitant might elect to receive a life income with or without a "Ten-years Certain" feature. If the annuitant should die during the continuance of the contract the company agreed to pay to his designated beneficiary (or survivor) a certain sum as a "death benefit." During the first three years that sum is the amount of the premium or consideration paid for the contract and thereafter it is the amount of such consideration plus an interest surcharge. The right to change the beneficiary was reserved to the annuitant.

On that record it was held that these annuity policies, when so delivered to the employees, conferred upon them directly or through their designees such irrevocable and certain benefits which they could freely choose under the policy options, as to constitute "compensation [paid]" to the employees in the amounts of the respective costs of their policies to the employer.[4] The case of *George Matthew Adams*, 18 B. T. A. 381, was cited as the principal support for our conclusion. There this Court affirmed the action of the respondent in taxing to an employee as compensation the amount of a premium on a life insurance policy on the life of the employee paid by his employer. In

[4] To the same effect are the recent decisions in *Oberwinder* v. *Commissioner*, 147 Fed. (2d) 255, and *Robert P. Hackett*, 5 T. C. 1325.

so doing we rested our decision largely on the facts that the policy was delivered irrevocably to the employee and he "could designate the beneficiaries."

With these considerations in mind, what is the effect of the evidence here? Petitioner points to the resolution which designates the questioned disbursements as compensation for services rendered. But that formal action is not decisive. The question is whether the designation, as such, is genuine or fictitious. *Bogardus* v. *Commissioner*, 302 U. S. 34. The record discloses that 85 percent of petitioner's employees operate on a guaranteed piecework rate. Each is paid in accord with what he produces, without restriction upon the amount of his production. The base pay of other employees, whose duties are not susceptible of piecework treatment, is fixed favorably to the prevailing wage rate paid by manufacturing industries in the community for similar services. In addition to the base pay as thus fixed, petitioner in each of the taxable years paid cash bonuses. In 1940, the cash bonus was in excess of 50 percent of the base pay. In 1941, the cash bonus was approximately 100 percent of base pay to regular employees and ranged from 100 percent to over 700 percent in the case of certain executives and keymen. The respondent makes no attack on these cash payments. Such generous cash payments might well be considered full compensation for services actually rendered. Cf. *Botany Worsted Mills* v. *United States*, 278 U. S. 282. Our inquiry, however, is limited to the additional amounts paid to purchase annuity contracts and the amount contributed to the so-called profit-sharing trust and designated by petitioner as "additional compensation."

These payments were not made under any agreement or prior understanding with the employees. Petitioner makes no such claim. The amounts to be appropriated were not determined until the close of the year after the services had been performed and the yearly profits ascertained. The employees were not officially informed that such "additional compensation" had been provided. Nothing evidencing their interests in either the annuity contract or the trust was delivered to them. Throughout the hearing, the president of the petitioner referred to the payments as "incentive pay." It is true, as petitioner argues, there are many decisions where so-called "incentive pay" has been recognized as compensation and taxed to the recipient. But such cases are those where the services were performed under a prior existing contract; where the payments were cash bonuses paid for services actually rendered; or where some absolute benefit has been conferred upon the employee in the form of a true annuity or life insurance contract. Cf. *Commissioner* v. *Bonwit*, 87 Fed. (2d) 764; *George Matthew Adams, supra; Richard R. Deupree, supra; Renton K. Brodie, supra; Charles L. Jones*, 2 T. C. 924; *Oberwinder* v. *Commissioner, supra;*

*Hubbell* v. *Commissioner*, 150 Fed. (2d) 516. The rationale of such cases is that the employee then actually or constructively received something of value.

Let us first consider the payments for annuities. This may be made more clear by stating an illustrative case. Assume that John Doe is 30 years of age, has been an employee of petitioner for 10 years, and his name appears on the list attached to and made a part of the annuity contract. By this list it appears that, of the total premium paid by petitioner, the sum of $1,200 is allocated to the purchase of an annuity of $150 per year payable to John Doe in 30 years when he reaches the age of 60. By the terms of the annuity contract he has no present vested interest in the annuity, nor is the employer obligated under a definite pension plan, constituting a provision of its contract of employment, to make any further payments in future years increasing the amount of the annuity. If John Doe dies or for any other reason ceases to render service to petitioner before the expiration of 30 years the annuity, as to him, is canceled and 90 percent of the $1,200, together with interest thereon at $3\frac{1}{2}$ percent per annum compounded annually, or the entire $1,200, whichever amount is larger, although not refundable to petitioner, is made available to it either to buy additional annuities for employees for whom annuities have already been purchased or to purchase an annuity for a new employee who takes the place of John Doe. If the latter survives the 30-year term and renders service to petitioner during that period he obtains a vested interest in the annuity, with the right to exercise options thereunder. He may also secure a similarly vested interest prior to the expiration of 30 years if petitioner in future years, although not obligated to do so, buys him additional annuities sufficient to bring the annuities standing in his name to an amount equal to his yearly salary, or $3,500, whichever is less.

Petitioner contends that under these facts it has, in the present year, paid John Doe $1,200 as compensation for services which he has actually rendered to it. It is argued that, since the payment of that sum is made in the taxable year and may not be recaptured under any circumstances for use for general corporate purposes and since its payment was authorized as compensation for services rendered, it is an allowable deduction for that year, although receipt of any payment by John Doe may be delayed for many years and, in fact, may never be received by him or his estate. We think the position is not tenable.

The fair market price of such a policy *to the employee annuitant* is not established. In fact it may be doubted that he could have bought such a policy—certainly nothing before us so indicates. As to the employee, any benefit upon the payment by the petitioner-employer was too uncertain and nebulous. Neither he nor his estate will be entitled

to receive anything of value in the future unless he remains in the employ of petitioner and renders service in that employment over a long term of years. We conclude that the contested payments by petitioner for annuities did not constitute "compensation [paid]."

The same general conditions pointed out with respect to the payments for annuities are also present, in great measure, in the employees' trust created by petitioner in 1941 and to which it transferred $1,000,000 in that year. This expenditure was made from petitioner's very large wartime profits and occurred after those profits were determined. The payment was purely voluntary. The fact that any such payment would be made was not communicated to the employees during 1941. It was made after the payment of the largest cash bonus in the history of the company and also after the declaration of the largest cash dividend ever paid by petitioner.

Petitioner asks us, upon brief, to find as a fact that, in case of the death of any beneficiary, payment of his or her proportionate part of the trust fund would be made to his or her family or estate and that at the termination of the trust any portion of the several shares of the beneficiaries not theretofore distributed would be received by them. However, an examination of the terms of the trust instrument establishes, we think, that such a finding is not supported by the record. It is true that 890 of petitioner's employees are, by the trust instrument, designated as beneficiaries, with interests in specific percentages of the total fund. The trustee, however, appears to be little more than a mere custodian. It is to invest and reinvest the fund only by and with the approval of the "Committee," except no securities of petitioner or its subsidiaries are to be purchased. It can distribute the fund only in accordance with orders which it receives from the "Committee." The trustee is relieved from liability if the "Committee" exceeds its authority. This committee of 3 is chosen from petitioner's officers. It is provided that the president of petitioner shall be a member *ex officio*. The other 2 members are designated by name, as are their successors in case of their deaths or failure to serve. If all of the named members become unable to serve, successors are to be appointed by petitioner's directors. Thus petitioner at all times retained control of the committee. The trust is to continue for a term of 10 years. No distribution may be made to or for the benefit of any "beneficiary" during that period except by the voluntary action of the committee. The latter may, wholly within its discretion, direct the trustee to pay over all or part of any share to or for the benefit of any beneficiary. It is within its discretion to determine for what the "benefit" expenditures shall be made. The beneficiary has no right to select or direct the particular benefit for which his or her share is to be expended. In the event of the death of a beneficiary, his or her particular

share does not represent an asset of the decedent's estate unless the committee sees fit, within its discretion, to pay it over to the estate. It is discretionary with the committee as to whether it shall pay the share to the widow and/or to one or more of the children, or expend part or all of it for the "benefit" of one or more of those persons. The beneficiary has no right to designate the party who is to receive payment nor what the "benefit" shall be. Cf. *Renton K. Brodie, supra,* and *Gisholt Machine Co.,* 4 T. C. 699. Upon the termination of the trust, if a beneficiary be living the committee may, in its discretion, either distribute his share to him or use it, in some way, for his benefit, the committee to be the judge as to what that "benefit" shall be.

The meaning of "benefit" has been broadly constructed. *Helvering* v. *Evans,* 126 Fed. (2d) 270; certiorari denied, 317 U. S. 638. Under the present circumstances it could well include uses of the funds which would result in no practical benefit either to the employees or their families or, at most, but a very remote one.

The purpose of petitioner in the creation of the trust and the planned use of the fund, under the direction of the committee, are explained in the testimony of petitioner's president. He states that it was anticipated that petitioner could not retain in its employ its full force after the close of the emergency and the consequent reduction in its volume of manufacture. He testified that petitioner desired to establish a fund from which it could make payments to employees whom it was forced to drop from the rolls in the future and that it was intended that, as to those employees who were not dropped and who survived the 10-year term of the trust, the committee would direct that their remaining shares of the fund be used by the trustee to purchase additional annuities for them under the existing annuity contract. As we have heretofore pointed out, a payment to an employee under these annuities, or the creation of vested interests in such annuities, was conditioned, in each case, upon the employee remaining in the service of petitioner until he or she reached the age of 60 years. Death or separation from the service terminated all rights.

As is true of the annuities, the record is silent as to the fair market price *to the employees* of their interests in this trust. In fact, whether such interests could have been purchased by the employees may be doubted.

We have no doubt that in the creation of this trust, as in the purchase of the annuities, one of the purposes petitioner had in mind was the benefit of its employees. That purpose is admirable. But we think that the benefits to the employees upon the payment to the trust in 1941 were so uncertain, indefinite, and intangible as not to constitute "compensation [paid]" to the employees. Admittedly, petitioner can not recapture this fund, but the practical effect of its

action appears to us to be little more than the creation of a reserve for use in future years in making payments to or for deserving employees or to such among the families of deceased employees as it may voluntarily decide to benefit.

Petitioner relies heavily upon our decision in *Gisholt Machine Co.*, *supra*. It is argued that the situation there was identical with that here. We do not agree. There the issue was the deductibility of the payment by an employer to a trust for the employees, as compensation, under section 23 (a) of the code. In that case the production employees of the taxpayer had received a large increase in pay in the taxable year. There had been no corresponding increase in the pay of executives and certain key employees. In these circumstances the taxpayer authorized the distribution of an amount by a committee, which amount we found, as a fact, constituted reasonable compensation for the *services actually rendered* by these latter employees. It was not revealed whether they reported any of this amount as compensation. Under the plan adopted, a portion of this additional compensation was distributed in cash to the designated employees and the balance was placed in trust for future distribution. There are many differences in the facts there and those here. One very significant difference is that, unlike the situation here, in case of the death of any one of the beneficiaries of the trust before distribution to him of his share of the trust fund, payment would be made of his share to any beneficiary he might designate. See *Renton K. Brodie, supra.* Thus, it may be said to have been implicitly decided that the employee there received a benefit having a then value equal to its cost to the taxpayer—which value, as stated, we found as a fact constituted reasonable compensation for past services, and so allowed the contested deduction.

Congress has gone far in sections 23 (p) and 165, to indicate its approval of provision by employers for the old age financial security of their employees. Deduction of payments for that purpose is there authorized under certain conditions. Why the disbursements in controversy, even assuming their reasonableness, were not made so as to comply with the law, we do not know. It may be assumed that petitioner preferred to keep the benefits from and control of the transferred funds which this record shows it retained rather than to relinquish them. Likewise we assume that petitioner deliberately chose to determine for itself if, as, and when such disbursements and their amounts should be made in the future rather than to lose those rights and commit itself to the definite program for the future required by section 165. See Regulations 103, arts. 19.23 (p)–1 and 19.165–1. In any event we think that, to be deductible as "compensation [paid]," under the applicable section, the payments must be more than merely

irrevocable by the employer. The employer can not retain the substance and grant only the shadow. The benefit to the employee, when such disbursements are made, must be less illusory and more certainly tangible and definite than those here in dispute. Congress has not said that such disbursements are deductible merely because they are praiseworthy.

In view of our conclusion that the disbursements in dispute did not constitute compensation paid for services rendered, any question of their reasonableness becomes moot.

This brings us to a consideration of petitioner's further contention that the disbursements are deductible as ordinary and necessary business expenses in that they constitute a cost of maintaining an incentive plan or program.

We have already decided that these payments were not "compensation [paid]." Section 23 (a) deals specifically with "compensation [paid]." It describes particularly the payments of compensation for services which are allowable as deductions. Such payments are not allowable unless they fall within those specifications. Under the doctrine of *"inclusio unius est exclusio alterius"* we think the section denies the deduction of such payments for services, regardless of their designation, since they fall outside the field of allowable compensation deductions. Aside from this conclusion, and in any event, has petitioner established that the questioned disbursements were deductible as ordinary and necessary expenses?

It is argued that the disbursements were ordinary. True, petitioner had bought similar annuities in prior years, but the contribution to the trust in 1941 was the first such payment. To be deductible, however, expenses must be both "ordinary and *necessary*." And "necessary" means more than commendable on the part of the employer and generally beneficial to him, as these undoubtedly were. *Welch* v. *Helvering*, 290 U. S. 111. In both of the taxable years, petitioner had paid cash bonuses in such large amounts as to make employment in its service a thing to be highly valued. None of the questioned disbursements were made because of any legal obligation. They were decided upon and authorized at the conclusion of the year's business when the profits of operation and the effect thereon of income and excess profits taxes were apparent. The amount of the contested deficiencies is about 75 percent of the payments in controversy. In authorizing these payments, petitioner evidently anticipated their allowance as deductions from its large gross income. It was obvious that these large expenditures, if deductible, could be made without much reduction in the surplus of petitioner. The situation was that, if these earnings were not disbursed through some deductible expenditure, practically the entire amount would have had to be paid as income and excess

profits taxes. But the high rates of these taxes were deliberately fixed by Congress for the purpose of increasing the public revenue to meet rapidly growing Government expenditures for military purposes by taking a great part of such abnormally high profits resulting directly or indirectly from those Government expenditures.

We are convinced that petitioner had built up a loyal and efficient force of employees which was an important factor in the success of its business. Undoubtedly the preservation of that condition would be a benefit to petitioner in the future. Such future benefit would be more direct and tangible than would have been that resulting from the payment of approximately similar amounts to the Government as taxes. But this loyalty and efficiency already existed at the end of 1939. To preserve this condition the petitioner, in the taxable years, had paid very large cash bonuses which greatly exceeded those of earlier years. In the face of those facts and the prospective impact of the high tax rates on its current large profits, has petitioner carried its burden of establishing that the large additional disbursements in dispute were made because these expenses were "necessary" to preserve this loyalty and efficiency in its employees? We pass that question because, even if petitioner had established that fact, we think it would still not be entitled to the contested deduction as a necessary business expense.

Petitioner cites many cases in support of its position. They fall into two general classes, neither of which fits the present picture. One class includes those cases where expenditures were found to constitute reasonable compensation paid to the employees for services rendered and allowed as such. In the other class are cases where expenditures were made in furnishing employees facilities for medical or surgical aid, healthful recreation, or religious worship, the furnishing of which was held, under particular circumstances, to have been reasonably necessary to the furtherance of the general interests of the employer. None of these cases seem to us to be controlling or even helpful.

However, we think *Welch* v. *Helvering, supra,* directly supports our conclusion. As was pointed out by Mr. Justice Cardozo in that case, the fact that voluntary payments are necessary for the development of petitioner's business in the sense that they are appropriate and helpful does not establish them as *necessary* within the purview of section 23 (a), *supra.* Many such expenses are more in the nature of capital expenditures than deductible operating expenses. In that case the taxpayer, carrying on a business as a grain buyer for the Kellogg Co., paid certain of his customers in each of the taxable years a large portion of his gross income from commissions. These customers were former creditors of a company with which the taxpayer had been connected and which had gone through bankruptcy.

The payments of the taxpayer to the creditors were upon debts due them but the collection of which was barred by the discharge in bankruptcy. These payments were made by the taxpayer to these creditors to make possible the establishment of business relations and improve his credit with them and create a good will which would enable him to do business with them, from which he would realize profit. It was held there that, although the disbursements were made for such purpose and had the effect anticipated, they were not necessary business expenses subject to deduction, but more nearly resembled capital outlays to build up a good will among those on whom the success of the business of the taxpayer depended. There, the expenditures were made to create friendly relations and retain customers. Here, the disbursements were made to maintain such relations and secure the continued and uninterrupted service of employees.

Petitioner's second alternative argument is that the payments in question do not represent deductions from gross income, allowability of which is to be determined under section 23 of the code, but really constitute an item of cost of goods sold and thus are to be reflected in computing gross income. As such, petitioner argues that respondent is without jurisdiction to eliminate them or redetermine their amount. It is contended that they are of the same character as costs paid by petitioner for raw materials or for base pay of its productive employees under their contracts of employment.

We think that this theory needs little discussion. In its returns for the taxable years petitioner did not so treat these questioned items. They were not included in such costs there, but were deducted from gross income. Its position now is that voluntary bonuses and allowances paid at the end of the year from profits computed upon costs expended or accrued prior to that time constitute a cost of goods sold. We disagree. Petitioner cites no authority and we know of none supporting this position. Cost of goods sold, here means, we think, the amount which the manufacturer pays for raw material and for the labor and expense entering into the conversion and fabrication of that material into the finished product. The items in controversy represent payments voluntarily made and not determined upon until after the payment of all such costs and the manufacture of the goods were completed. These articles were then left in the employer's hands free to sell at a price based upon that cost. The items in dispute were voluntary payments from the profit accruing to petitioner from such sale. This profit petitioner was free to use for any purpose. To hold that such disbursements constitute a cost of goods sold would require the conclusion that the provisions of section 23 (a) regarding the deduction of payments for services rendered has no application to manufacturing corporations. But there is an unbroken line of cases in other courts as well as the Tax Court in

which the deductibility of compensation payments to the employees of a manufacturing corporation was determined under section 23 (a).[5] We think those cases were properly so decided and that the position of petitioner here is without merit.

Since certain issues were disposed of by stipulation,

*Decision will be entered under Rule 50.*

Reviewed by the Court.

VAN FOSSAN, *J.*, dissents.

---

SMITH, *J.*, dissenting: The petitioner contends that the premiums paid by it in the amounts of $400,008.84 in 1940 and $575,206.43 in 1941 upon a group annuity policy to the Sun Life Assurance Co. of Canada are deductible from gross income as "ordinary and necessary" expenses of operation. The premiums paid on this policy in the years 1936 to 1939, inclusive, in the respective amounts of $486,389.26, $359,803.71, $99,930.71, and $132,251.57 were apparently allowed by the respondent as legal deductions from gross income. In my opinion there is no more reason for the respondent to question the deduction of the amounts paid in the taxable years before us than in prior years. The respondent does not contend that the amount of the premium paid in 1940, together with other amounts paid as compensation to the employees, was in excess of reasonable compensation for services rendered. And for the year 1941 the respondent has determined only that the amounts of the premium paid on the policy plus the $1,000,000 paid to the Cleveland Trust Co. as trustee constitute unreasonable compensation for services rendered during those two years. I do not think there is any more ground for questioning the reasonableness of compensation for 1941, so far as the premium is concerned, than for the year 1940.

The premiums paid on this policy were for the benefit of the petitioner's employees. The employees knew that they were the beneficiaries under the policy. The premiums paid constituted incentive compensation to them. That such incentive compensation was effective in obtaining unusual efforts on the part of the employees is abundantly shown by the record. The profits from operation were enormous.

In my opinion it should be the policy of the Government not to question the amounts of incentive compensation paid to nonstockholder employees. Such incentive compensation inures to the benefit of the employees, avoids labor disputes, and in the instant case greatly increased the output of and the profits of the corporation.

---

[5] See cases of character represented by: *Wagegro Corporation*, 38 B. T. A. 1225; *Van Hooser & Co.* v. *Glenn*, 50 Fed. Supp. 279; *Toledo Grain & Milling Co.* v. *Commissioner*, 62 Fed. (2d) 171; *Seinsheimer Paper Co.* v. *United States*, 63 Ct. Cls. 429; *Botany Worsted Mills* v. *United States*, 63 Ct. Cls. 405; affd., 278 U. S. 282; *Gisholt Machine Co.*, 4 T. C. 699; *Werner Machine Co.* v. *Manning*, 129 Fed. (2d) 105.

I do not think the fact that the employees are not taxable during the taxable years upon any part of the premiums paid to the insurance company is relevant in this case. Cf. *Commissioner* v. *Bonwit* (C. C. A., 2d Cir.), 87 Fed. (2d) 764; *Gisholt Machine Co.*, 4 T. C. 699; *Phillips H. Lord, Inc.*, 1 T. C. 286.

Nor do I think it is material that an employee may lose some of his benefits under the insurance contract if he ceases to be an employee. The petitioner can never recover any part of the premiums which it has paid upon the policies. The benefits lost by the employee upon severance of his relations with the company accrue to other employees. I therefore am of the opinion that the amounts constitute legal deductions from gross income as ordinary and necessary expenses of operation.

The payment of $1,000,000 to the Cleveland Trust Co. as trustee in December 1941 seems to me to fall in a different category. It is quite clear that this payment was made by the petitioner in consideration of the fact that it would greatly reduce its excess profits tax for 1941. The respondent has determined that the payment (added to other compensation paid) was in excess of reasonable compensation for services rendered and I am of the opinion that the evidence does not disprove his determination. I therefore concur in the opinion so far as it disallows the deduction from gross income of 1941 of the $1,000,000 in question.

———

BLACK, *J.*, dissenting: I wish to note my dissent to the conclusions reached in the majority opinion. In the light of certain prior decisions of this Court published in our B. T. A. and T. C. reports, it is difficult for me to see how the majority could reach the conclusion which it has reached in the instant case. I shall not write any lengthy dissenting opinion. I shall simply cite and briefly comment upon some of the cases with which, as I view it, the majority opinion is in direct conflict.

First, as to the $400,008.84 appropriated by petitioner in the taxable year 1940, and the amount of $575,206.43 appropriated in 1941 and used for the purchase of funded annuity contracts for certain employees named in the group retirement annuity policy. Petitioner points out in its brief that, in the few cases where the employer's right to the deduction has been questioned, the Tax Court has allowed the premium payments to the employer as a deduction. Petitioner cites in support of this contention certain memorandum opinions of this Court, and *Phillips H. Lord, Inc.*, 1 T. C. 286. I shall not comment upon the memorandum opinions cited by petitioner because they are not to be found in our published T. C. reports. However, I shall briefly comment upon *Phillips H. Lord, Inc., supra.*

I think that case fully supports petitioner's contention. It is true

that in the *Lord* case money was paid, in the first instance, to a trustee who then paid it as a premium to the insurance company issuing the employees' annuity policy. There is, however, in my opinion no reason to attribute different legal consequences to a situation where, as here, the money was paid direct to the Sun Life Assurance Co. in the purchase of the group retirement annuity policy, rather than through the medium of a trustee to the Equitable Life Assurance Society for a group retirement annuity policy, as was done in the case of *Phillips H. Lord, Inc.* To say that a distinction exists on that kind of a ground would, it seems to me, be pure hairsplitting and without any legal justification. Therefore, I think the case of *Phillips H. Lord, Inc., supra,* fully supports the group retirement annuity policy premium deductions which petitioner seeks to have allowed in the instant case.

Now, as to the deduction of the $1,000,000 which petitioner paid over in 1941 to the Cleveland Trust Co., as trustee, for future distribution to its employees in accordance with the plan and for the purposes named in a resolution adopted by petitioner's board of directors on December 18, 1941, I think this deduction is on all fours with that which was in controversy in the case of *Gisholt Machine Co.,* 4 T. C. 699. In that case the Commissioner disallowed a deduction in 1941 of $173,500 paid by the taxpayer corporation to the trustee of its newly established "Executive Employees' Retirement Trust." He determined that the amount was not deductible under either section 23 (a) or section 23 (p); that it was not a reasonable allowance for compensation for personal services of employees or otherwise an ordinary and necessary business expense; and that the trust was not an employees' trust under section 165, as amended by section 218 of the Revenue Act of 1939. The taxpayer claimed that the deduction was allowable under section 23 (a) (1) (A), providing for the allowance as deduction of ordinary and necessary business expenses paid in the taxable year including a reasonable allowance for salaries or other compensation for personal services actually rendered. Petitioner conceded that section 23 (p) was not applicable and claimed no deduction under that subparagraph of the statute. We sustained petitioner's contention that the deduction was allowable under section 23 (a) (1) (A), and among other things said:

In our opinion, the amount of $173,500 which was actually paid by the corporation to the trustees of the employees' retirement trust in 1941 was deductible by the corporation under section 23 (a) because it was within the compensation paid by it to its employees for services actually rendered by them. See I. T. 3346, C. B. 1940–1, pp. 62, 64. Therefore, it is unnecessary, and would be improper, to consider the question whether, if the amount did not fall within section 23 (a), it is nevertheless deductible because it falls within the description of subsection (p). * * *

The majority opinion herein undertakes to distinguish the *Gisholt Machine Co.* case on its facts, but, to my way of thinking, the distinction which the majority opinion undertakes to draw is altogether unconvincing. To be sure, there are, as one would naturally expect, certain differences of phraseology in the trust indenture involved in the *Gisholt Machine Co.* case from the phraseology of the trust indenture in the instant case. However, such differences as there are, are, in my opinion, without any controlling significance. The real outstanding purpose of both trusts was to provide future financial benefits for the taxpayer's employees who were named therein and the payments were beyond recall by the taxpayer. That was the real substance of the trust indentures in both cases, and if we were right in allowing the taxpayer the deduction in the *Gisholt Machine Co.* case, as I think we were, then we should allow it here. The Commissioner did not appeal the *Gisholt Machine Co.* case and it, therefore, stands unreversed. For other cases which I think support petitioner's contention for the $1,000,000 deduction of the irrevocable contribution which it made in 1941 to the trust estate for the exclusive benefit of its employees, see *Hibbard, Spencer, Bartlett & Co.*, 5 B. T. A. 464; *Elgin National Watch Co.*, 17 B. T. A. 339; *Oxford Institute*, 33 B. T. A. 1136; and *Texas Pipe Line Co.*, 32 B. T. A. 125; affd., 87 Fed. (2d) 662.

Much is made of the fact, in the majority opinion, that no employee of petitioner had any such vested right in the corpus of the trust which was set up as would require him to return the amount allocated to him as income in 1941 and that none of such employees did return any of the amounts as income in that year. This, in my opinion, is without any controlling significance and it has been many times so decided by this Court.

The important inquiry in a case such as we have here is: Did the taxpayer irrevocably part with the money which it paid to the "employees' trust and, if so, does the payment fall within the ambit of "ordinary and necessary business expenses" as contemplated by section 23 (a) (1) (A)? If these questions are answered in the affirmative, the deduction is allowable to the employer regardless of whether the amounts so paid are taxable to the employee in that particular year. The court, in affirming our decision in the *Texas Pipe Line Co.* case, *supra*, gave attention to this question and ruled against the Commissioner's contention in the following language: "This expense was incurred and paid even though no specific employee had a vested right to the stock until some subsequent time."

Now, in arriving at the views I have expressed above, I have made no attempt to discuss whether the benefits allocated to each employee under the $1,000,000 paid to this employees' trust in 1941, plus other compensation paid, results in excessive compensation for 1941 to some

of the employees. The Commissioner in his determination of the deficiencies for 1941 attacks the reasonableness of the compensation paid to 438 out of a total of over 900 employees. It may well be that, as to some of these 438 officers and employees of petitioner in 1941, the premiums paid for the group annuity policy and the $1,000,000 paid to the employees' trust, plus other compensation which they had already received, would result in excessive compensation for 1941. Cf. *Draper & Co.*, 5 T. C. 822. The majority, however, makes no findings of fact upon this subject and, therefore, I make no attempt to discuss it or express any opinion as to its merit. Plainly, the majority opinion does not rest any of its disallowance of the deductions claimed in 1941 upon the ground of the unreasonableness of the payments, for the opinion, after ruling that the items in question were not deductible as compensation paid, says: "In view of our conclusion that the disbursements in dispute did not constitute compensation paid for services rendered, any question of their reasonableness becomes moot." Therefore, it is plain that if any part of the deductions in dispute is to be disallowed on the ground of unreasonableness, the majority opinion would have to be based upon further and additional findings of fact and this case would have to be reconsidered. This fact is made all the more plain when it is considered that the Commissioner has only determined that the total compensation of 438 of petitioner's employees was excessive out of a total of more than 900 which are involved.

For reasons above stated, I respectfully dissent from the majority opinion.