ALVIN GLEN HALL, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

GUY N. HALL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE,
RESPONDENT.

RALPH MILLER FORD, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket Nos. 1049, 1053, 1057.   Promulgated November 29, 1946.

*Benjamin Grund, C. P. A.,* and *Maxwell Wexler, C. P. A.,* for the
petitioners.
*Frank M. Thompson, Jr., Esq.,* and *S. Earl Heilman, Esq.,* for the
respondent.

FINDINGS OF FACT AND OPINION.

TYSON, *Judge:* These consolidated proceedings involve the follow-
ing income tax deficiencies:

|  | Year 1940 | Year 1941 |
|---|---|---|
| Alvin Glen Hall | $1, 745. 17 | $9, 909. 94 |
| Guy N. Hall | 1, 745. 18 | 9, 898. 20 |
| Ralph Miller Ford | 826. 49 | None |

In the proceedings of Alvin Glen Hall and Guy N. Hall the ulti-
mate issue presented is whether for each of the years 1940 and 1941
the respondent correctly determined the net income of the partner-
ship of Pioneer Contracting Co., and, as a necessary consequence, the
partners' distributive shares thereof, and this issue involves, in turn,
three subsidiary questions as hereinafter set out. In those two same
proceedings one question as to a claimed deduction of $18,116.64 for
1941 by Pioneer Contracting Co. for equipment rental expense has
been abandoned. The proceeding of Ralph Miller Ford presents only
one of those subsidiary questions, i. e., depreciation on Pioneer Con-
tracting Co.'s construction equipment for the one year, 1940. We
first set forth findings of general facts pertinent to the issue and to
all or most of the three subsidiary questions, and then as to each such
question we set forth separate findings of fact particularly applicable
thereto, and our opinion thereon.

FINDINGS OF GENERAL FACTS.

Petitioners Alvin Glen Hall and Guy N. Hall are citizens of the United States and residents of Dyersburg, Tennessee, and for the calendar years 1940 and 1941 they each filed their tax returns, on the cash basis, with the collector of internal revenue at Nashville, Tennessee. Petitioner Ralph Miller Ford is a citizen of the United States and a resident of Baton Rouge, Louisiana, and for the calendar year 1940 he filed his tax return, on the cash basis, with the collector of internal revenue at New Orleans, Louisiana.

Throughout the years 1940 and 1941 petitioners Alvin Glen Hall and Guy N. Hall each owned a 25 per cent interest in the Pioneer Contracting Co. of Dyersburg, Tennessee (hereinafter referred to as Pioneer), a partnership engaged principally in the contracting business and also in farm operations. Throughout those two years the remaining 50 per cent interest in Pioneer was owned by a partnership known at Forcum-James Construction Co. of Dyersburg, Tennessee (hereinafter referred to as the Construction Co.). Petitioner Ralph Miller Ford owned a 25 per cent interest in the Construction Co. throughout 1940.

Throughout the year 1941 Pioneer owned a 50 per cent interest in each of two partnerships, one known as Pioneer-Hereford Co. of Dyersburg, Tennessee (hereinafter referred to as Hereford), and the other known as Hall Farm Co., also of Dyersburg, Tennessee (hereinafter referred to as Hall Farm) both of which partnerships were engaged principally in farm operations. Hereford kept its accounts on the basis of a fiscal year ended June 30.

Respondent increased the net income as reported by Alvin Glen Hall and Guy N. Hall, respectively, by the amounts of $2,938.01 for 1940 and $14,584.38 for 1941 as a result of increasing their respective distributive shares of the net income of Pioneer by such amounts for those years. Respondent increased the net income as reported by Ralph Miller Ford for the year 1940 by the amount of $1,481.51 as a result of increasing his distributive share of the net income of the Construction Co., the net income of the latter having been increased by $5,876.02 for 1940 as a result of its 50 per cent interest in Pioneer.

*First Subsidiary Question—Depreciation, Contracting Equipment.*

In its income tax returns Pioneer claimed deductions for depreciation on its construction equipment in the amounts of $37,767.75 for 1940 and $72,250.16 for 1941, and in determining Pioneer's distributable net income for those years the respondent disallowed $11,752.04 for 1940 and $16,705.64 for 1941 of such claimed deductions. All three petitioners allege error in respondent's determination for 1940 and petitioners Alvin Glen and Guy N. Hall allege error in respondent's determination for 1941.

FINDINGS OF FACT.

Prior to and during 1940 and 1941 Pioneer's principal business was that of a contractor in the construction of levees, dams, reservoirs, and roads and in excavation work, all of which involved digging, moving, dumping, and grading of soil, and it owned various types of equipment employed in that work.  During 1940 and 1941 Pioneer had contracts which because of the nation's defense program required 24 hours a day operation for excavation work on defense plants where speed was essential; for construction of levees sometimes 30 feet high above ground level and having very steep grades; and for construction of earth fill dams approximately 25 feet high.  The sand, and mud and steep grades encountered on those jobs, the round-the-clock use of equipment without time for proper upkeep and usual repair of same, and the necessity of employing new inexperienced employees, caused much greater wear and tear on Pioneer's equipment during 1940 and 1941 than would have occurred under normal operating conditions.  During 1941 and subsequently Pioneer had more breakdowns on equipment than ever before because of the extra hard use and lack of repair parts.  Pioneer's past experience showed that good equipment is a vital and principal factor in meeting competition in its line of work and it operated on an established principle of buying new equipment as often as needed, but during the war years such equipment was hard to obtain and old equipment was kept in use beyond its economical usefulness.

During the years in question Pioneer owned a large number of items of construction equipment, but only 16 of such items are involved herein, and the remaining useful life of such 16 items was as follows:

| Item | Remaining life |
|------|----------------|
| (1) One Page dragline | 5 yrs. from 1- 1–40 |
| (2) Two Euclid trac-trucks | 2 yrs. from 1- 1–40 |
| (3) Two Euclid trac-trucks | 2 yrs. from 1- 1–40 |
| (4) One bulldozer | 2 yrs. from 1- 1–40 |
| (5) One auto patrol | 2 yrs. from 1- 1–40 |
| (6) One used Bucyrus dragline | 4 yrs. from 1- 1–40 |
| (7) One bulldozer | 3 yrs. from 1- 1–40 |
| (8) One Cat. motor grader | 3 yrs. from 3- 1–40 |
| (9) One D–4 tractor and bulldozer | 3 yrs. from 3- 1–40 |
| (10) One D–6 tractor | 3 yrs. from 6- 1–40 |
| (11) Two Kohler light plants | 3 yrs. from 7- 1–40 |
| (12) One lot used grading equipment | 2 yrs. from 12–31–40 |
| (13) One used model 8 N W dragline | 2 yrs. from 1- 1–41 |
| (14) Three used N W draglines | 3 yrs. from 7- 1–41 |
| (15) Three used Athey wagons | 2 yrs. from 10- 1–41 |
| (16) Six Euclid trac-trucks | 3 yrs. from 11- 1–41 |

There is no controversy as to the date of acquisition, the cost of all the items involved, and the unrecovered cost on December 31, 1939, of items acquired prior to 1940. The question presented as to the 16 items is one of fact; namely, what was the remaining useful life, on January 1, 1940, for items acquired prior to that date, and from the date of acquisition for items acquired during 1940 and 1941? On such questions our above finding of ultimate facts is conclusive.

## Second Subsidiary Question—Farm Operations.

This question involves the redetermination of Pioneer's income for 1941 from its own farm operations and from its 50 per cent distributive share of the net income of the partnerships of Hereford and Hall Farm. The specific question is whether respondent erred in disallowing as ordinary and necessary business expense deductions for 1941 the respective amounts of $6,809.72 expended by Pioneer, $15,397 expended by Hereford, and $3,013.99 expended by Hall Farm in connection with their respective farm operations during 1941. In the alternative, petitioners Alvin Glen and Guy N. Hall allege that respondent has erroneously overstated Pioneer's net income by the amount of $5,101.59 from cattle operations for 1941, both directly as attributable to its own operations and indirectly as attributable to the operations of the subpartnerships of Hereford and Hall Farm.

### FINDINGS OF FACT.

In determining Pioneer's net income for 1941 respondent disallowed a deduction of $6,809.72 claimed by it for expenditures in its own farm operations. Also, as a result of his disallowing Hereford's claimed deduction of $15,397 and Hall Farm's claimed deduction of $3,013.99 for expenditures in their respective farm operations, respondent increased Pioneer's reported net income in the amounts of $7,698.50 and $1,507 by decreasing its 50 per cent distributive shares of the net loss reported for 1941 by Hereford and Hall Farm, respectively.

During the calendar year 1941 Pioneer expended $6,809.72 in connection with the operation of its farm, such sum consisting of $5,943.17 for cattle purchases, $586.55 for equipment, $250 for levee repairs, and $30 for fees. Of the cattle so purchased Pioneer sold, in the same year, cattle costing $3,878.77 for a total sales price of $3,236.26 resulting in a loss of $642.51 from such sales.

During its fiscal year ended June 30, 1941, Hereford expended $15,397 for the purchase of cattle in connection with its farm operations. Of the cattle so purchased in that fiscal year, Hereford sold, in the same year, cattle costing $2,438.10 for a total sales price of $2,919.20, resulting in a profit of $481.10 from such sales.

During the calendar year 1941 Hall Farm expended $3,013.99 for the purchase of cattle and hogs in connection with its farm operations. Of the hogs so purchased in 1941, Hall Farm sold, in the same year, hogs costing $295.75 for a total sales price of $544.16, resulting in a profit of $248.41 from such sales.

### OPINION.

Petitioners Alvin Glen and Guy N. Hall presented no evidence with respect to Pioneer's expenditures in 1941 for equipment, levee repairs and fees and, on brief, have abandoned their claim based thereon.

The respondent admits that farm operation expenditures were made in the amounts of $6,809.72 by Pioneer, $15,397 by Hereford, and $3,013.99 by Hall Farm, and further admits that he has not allowed any portion of such amounts, respectively, as a deduction in his determination of each partnership's net income for the period in question.

The complaint of petitioners is as to respondent's failure to allow any deduction for the *cost of cattle sold* by Pioneer and Hereford, and the *cost of hogs sold* by Hall Farm. Our above findings of fact as to such cost is conclusive on this question. The gain or loss sustained by Pioneer, Hereford, and Hall Farm on their respective sales is as set out in our findings of fact. Petitioners have failed to prove that such partnerships are entitled to any other deductions in determining their respective gain or loss on farm operations.

### Third Subsidiary Question—Pension Trust.

This question involves the propriety of respondent's disallowance of the amount of $7,500 claimed by Pioneer as a deduction for 1941 for ordinary and necessary business expenses represented by contributions by Pioneer in that year to a pension trust for the benefit of its employees, or, in the alternative, represented by compensation paid for services rendered by its employees during 1941. Respondent denies error in his disallowance of such claimed $7,500 deduction in determining Pioneer's net income for 1941.

### FINDINGS OF FACT.

On November 15, 1941, a written agreement, or plan, effective as of November 1, 1941, was entered into by Forcum-James Co., Forcum-James Construction Co., Pioneer Contracting Co., L. O. Brayton & Co., and W. R. Aldrich & Co., for the establishment of a pension trust styled "Forcum-James Associates Pension Trust" for the "exclusive benefit of some or all of the employees of each member of the group  *  *  *." The plan provided that beginning with November

1941, and on or before December 30 of each year thereafter, each member of the group was to notify the trustees of the "reasonable and fair Pension deposit voted to the employees," payment thereof to be made to the trustees within 2 months; that in determining the amount of the deposit each group member had the exclusive right to determine the amount, if any, for each of its employees, taking into consideration "such factors as responsibility of position, salary, age, period of service  *   *   *"; that any payment into the fund was in no event to be less, in any one year, than $50 for any employee who participated; that the participating employees were not required to match any funds deposited with the trustees by any of the group members; that all present employees who had been in the employ of any of the group members for at least 1 month out of each of the preceding 5 years prior to June 30, 1941, and who were still employed as of November 1, 1941, were eligible for participation in the plan; that participants were eligible for retirement pension payments on the first day of the month following either the age of 60 if employed for a period of not less than 15 years, or the age of 65 if employed for a period of less than 15 years; that upon retirement a participant would be entitled to 1 per cent per month of his individual account until exhausted and in the event of his death his designated beneficiary should receive the balance of payments when due; that in the event of death before retirement age the account balance was distributable to any beneficiary previously indicated by the employee; that the trustees were to invest the funds in the manner set out in the declaration of trust and the earnings therefrom were to belong to the individual employee participants and credited to their separate accounts annually within a reasonable time after the close of the fiscal year of the fund; that in the event of loss of his job through his own acts which resulted in the donors suffering any damage, the participant was to forfeit all fund earnings credited to his account, but those earnings were to be added to the earnings for the year in which the loss of job took place and redistributed to the remaining participants on the same basis as all other earnings for that year, and the balance remaining in such account was to be distributed to him immediately or retained by the trustees until the former employee reached retirement age and then distributed to him.

The plan further provided that it was entirely voluntary on the part of the donors and was not to be construed as creating a contractual relationship or a guaranty between the donors and an eligible employee; that the donors could amend or terminate the plan, provided, however, that no amendment was to be retroactive, nor was any amendment or termination to affect benefits created for individual participants; that, in case of a termination of the plan and a liquida-

tion of the fund, "anything else to the contrary notwithstanding, title to all monies or properties held for the benefit of each participant on the date of termination shall pass to such participant"; that it was to be impossible at any time prior to the satisfaction of all liability with respect to employees for any part of the corpus or income to be used for or diverted to purposes other than the exclusive benefit of participating employees. Also, under the plan the trustees were to maintain a separate account for each participating employee showing, among other things, the pension deposits made by the donors for participants' accounts, the aliquot share of the fund earnings, pension payments, balances remaining, and contingent beneficiaries; and were to make settlements with the participants in accordance with the plan. The plan was actuarily sound.

The declaration of trust executed on the same date as the plan named, as trustees, Vern Forcum, W. E. Moore, C. B. Ford, R. M. Ford, Alvin Hall, L. O. Brayton, W. R. Aldrich, and F. B. Liddell. It provided that the trustees should have complete management and control of the trust fund, including powers of investment, but they were to have no authority to take action impairing the established benefits of qualified participants, and that the cost of administering the fund should be paid out of the fund earnings. It also provided that the trust "shall continue until all funds trusteed hereunder are paid out and disbursed *in accordance with the terms of the Plan* \* \* \*" (emphasis supplied) unless sooner amended or terminated by majority action of the trustees and the donor companies, but such action should not have retroactive effect nor affect current benefits created for individual participants in accordance with the plan. The declaration of trust also contained provisions similar to those in the plan prohibiting the impairment of created rights of participants or the use of corpus or income for purposes other than for the exclusive benefit of participant employees.

The pension plan and trust agreement were printed in booklet form and distributed to all the employees of Forcum-James Associates.

The funds of the trust were kept separate from any funds of the donors to the trust fund.

During 1941, in connection with the pension plan, the Pioneer Contracting Co. paid over to the trustees a total of $7,500 consisting of $200 accrued expenses of the pension trust and $7,300 as contributions for its employees who were eligible under the plan. The amount contributed for each employee was determined by Pioneer on the basis of the value of services rendered, the responsibility of the position, and regular compensation of the employee. All the eligible employees were grouped according to the character of work performed. The contributions so determined and made to the fund fell in the following classifications:

| Number of employees | Job description | Contributions | |
|---|---|---|---|
| | | For each | Total |
| 1 | Estimating engineer | $1,000 | $1,000 |
| 2 | Superintendent | 1,000 | 2,000 |
| 1 | Field office manager | 500 | 500 |
| 1 | Foreman | 500 | 500 |
| 3 | Foreman of lesser importance | 250 | 750 |
| 2 | Foreman of lesser importance | 200 | 400 |
| 1 | Foreman of lesser importance | 150 | 150 |
| 1 | Foreman of lesser importance | 100 | 100 |
| 38 | Machine operators, timekeepers, etc. | 50 | 1,900 |
| 50 | Total | | 7,300 |

The total compensation paid to those 50 employees during 1941 amounted to $68,045.66. As to each employee, the wages earned by him during 1941, together with Pioneer's 1941 contribution to the pension fund for him, constituted reasonable compensation for services actually rendered during 1941.

Since 1941 the pension plan and trust have continued in operation and Pioneer has continued to make annual contributions thereto pursuant to the plan. The trust fund has been maintained separate and independent from the assets of each of the contributing companies.

### OPINION.

We hold that, since the amount of $7,300 was irrevocably paid in 1941 by Pioneer to a pension trust fund for selected employees and since the contribution, together with the wages earned by each of such employees, constituted reasonable compensation for services actually rendered during 1941, such amount of $7,300 is deductible as a business expense of Pioneer under section (a) (1), Internal Revenue Code,[1] irrespective of the question as to whether such amount constituted a contribution under section 23 (p) [1] to a pension trust described in

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions :

(a) EXPENSES.—

(1) IN GENERAL.—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered ; * * *

* * * * * * *

(p) PENSION TRUSTS.—

(1) GENERAL RULE.—An employer establishing or maintaining a pension trust to provide for the payment of reasonable pensions to his employees shall be allowed as a deduction (in addition to the contributions to such trust during the taxable year to cover the pension liability accruing during the year, allowed as a deduction under subsection (a) of this section) a reasonable amount transferred or paid into such trust during the taxable year in excess of such contributions, but only if such amount (1) has not theretofore been allowable as a deduction, and (2) is apportioned in equal parts over a period of ten consecutive years beginning with the year in which the transfer or payment is made.

* * * * * * *

(3) EXEMPTION OF TRUSTS UNDER SECTION 165.—The provisions of paragraphs (1) and (2) of this subsection shall be subject to the qualification that the deduction under either paragraph shall be allowable only with respect to a taxable year (whether the year of the transfer or payment or a subsequent year) of the employer ending within or with a taxable year of the trust with respect to which the trust is exempt from tax under section 165.

section 165. *Gisholt Machine Co.*, 4 T. C. 699; *Phillips H. Lord* 1 T. C. 286. The instant case is distinguished from *Lincoln Electric Co.*, 6 T. C. 37, 54, on the same ground the latter case was distinguished from *Gisholt Machine Co.*, *supra*.

Since the terms of the pension trust provide that the cost of administering the fund shall be paid by the fund out of its earnings and since the trust was a separate entity from Pioneer, the amount of $200 paid by Pioneer in 1941 for accrued expenses of the trust did not constitute a deductible business expense of Pioneer within section 23 (a), *supra*.

*Decision will be entered under Rule 50.*